**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PAUL COX,   individually and on behalf of the classes defined herein, ) ) | 08-C-1005 |
| Plaintiff, ) ) | Judge Guzman |
| ) | Magistrate Judge |
| v. ) ) | |
| UNIFUND CCR PARTNERS; ) CREDIT CARD RECEIVABLES ) FUND, INC., and ) ZB LIMITED PARTNERSHIP, ) ) | |
| Defendants. ) | |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**[1]

Plaintiff respectfully requests that this Court enter an order determining that this Fair Debt Collection Practices Act ("FDCPA") action may proceed as a class action against defendants Unifund CCR Partners, Credit Card Receivables Fund, Inc., and ZB Limited Partnership.

Plaintiff seeks to certify two classes, defined as follows:

**Count I:** (a) all natural persons (b) with respect to whom defendant Unifund CCR Partners filed a lawsuit (c) attaching a document in the form represented by Appendix A (d) which document was not sent to the addressee prior to the filing of suit (e) where the lawsuit was filed or served during a period beginning on a date one year prior to the filing of this action and ending 20 days after the filing of this action.

**Count II:** (a) all individuals with Illinois addresses, (b) against whom defendant filed suit on a credit card debt allegedly originated by First USA Bank (c) where both the date of charge off and the date of last payment, as shown by defendant's records, were more than five years prior to the date of filing,  (d) where the lawsuit was filed or served on or after a date one

---

[1] Exhibits referenced are attached to Memorandum in Support of Plaintiff's Motion for Class Certification.

1

year before the filing of this action and prior to a date 20 days after the filing of this action, and (e) defendant did not attach to the complaint a written contract signed by both the original creditor and the putative debtor. For purposes of the class definition, the date of last payment does not include payment preceded by a collection lawsuit or a threat of suit by Defendants.

Plaintiff further requests that Edelman, Combs, Latturner & Goodwin, LLC be appointed counsel for the class.

In support of this motion, plaintiff states:

**NATURE OF THE CASE**

1. This case arises out of a lawsuit filed in DuPage County, Illinois, by Unifund CCR Partners in January 2008, against plaintiff Cox to collect an alleged credit card debt, case no. 08 AR 22. Any such debt would have been incurred for personal, family or household purposes. Attached to the compliant filed against plaintiff is a document which defendant Unifund CCR Partners regularly attaches to collection complaints filed in courts. (Appendix A).Appendix A is a standard form document, filled out in a standardized manner.

2. Appendix A is devised to appear to be a statement sent to the putative debtor in the ordinary course of business. For example, it states at the bottom, "To receive credit for payments as of the date of receipt, we must receive your check or money order at [address]." In truth and in fact, Appendix A is not sent to putative debtors, except as an exhibit to a collection complaint. Plaintiff never received Appendix A by mail. The purpose and effect of Appendix A is to falsely represent that the document was sent to the putative debtor and not objected to.

3. The alleged debt that was the subject of 08 AR 22 had been charged off more than eight years prior to filing. The complaint did not have any written contract attached to it and did not allege any explanation for the absence of a written contract, if one existed. No contract wholly in writing ever existed with respect to the alleged debt.

4. The purported debt was barred by the five-year Illinois statute of limitations for contracts not wholly in writing. Unifund CCR Partners regularly sues Illinois residents for purported credit card debts on which both the charge-off date and the date of the last payment were more than five years previously, even though it does not have any written contract. Plaintiff was forced to retain counsel to defend the lawsuit. Unifund CCR Partners files lawsuits which it knows or should know are time-barred, hoping that the debtors will default. In a majority of instances, they do default.

5. If the statute of limitations bars a claim by an assignor, it also bars a claim by a private (non-governmental) assignee. Greene v. Taylor, 132 U.S. 415, 443 (1889). "[T]he assignee *** takes the assignor's interest subject to all legal and equitable defenses existing at the time of the assignment." John O. Schofield, Inc. v. Nikkel, 314 Ill. App. 3d 771, 783, 731 N.E.2d 915 (5th Dist. 2000). "[T]he assignee stands in the shoes of the assignor and, in so doing, is subject to any defense that might be urged against the assignor." Klehm v. Grecian Chalet, Ltd., 164 Ill. App. 3d 610, 617, 518 N.E.2d 187 (1st Dist. 1987). This includes the statute of limitations. Coryell v. Klehm, 157 Ill. 462; 41 N.E. 864, 868-69 (1895).

6. It is also well established that filing or threatening suits on time-barred debts is both unfair and deceptive, and violates the FDCPA, 15 U.S.C. §§1692e, 1692e(2), 1692e(5), 1692e(10) and 1692f. Kimber v. Federal Financial Corp., 668 F.Supp. 1480 (M.D.Ala. 1987); Baptist v. Global Holding & Inv. Co., 04-CV-2365 (DGT), 2007 U.S. Dist. LEXIS 49476 (E.D.N.Y., July 9, 2007); Goins v. JBC & Assocs., P.C., 352 F. Supp. 2d 262, 272 (D.Conn. 2005); Stepney v. Outsourcing Solutions, 97 C 5288, 1997 U.S. Dist. LEXIS 18264, 1997 WL 722972, at *5 (N.D.Ill. Nov. 13, 1997).

**CLASS CERTIFICATION REQUIREMENTS**

7. All requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been met.

8. Each class is so numerous that joinder of all members is impractical. With

respect to the Appendix A claim, it is reasonable to infer numerosity based on the following:

    a.    Appendix A is a standard form document, filled out in a standardized manner.

    b.    Unifund CCR Partners filed more than 500 lawsuits per month in the Circuit Court of Cook County alone during 2007. Others were filed in other Illinois counties.

    c.    Since December 27, 2007, Unifund CCR Partners has filed over 1000 complaint in the Circuit Court of Cook County, Illinois. Appendix B.

    d.    On information and belief more than 100 examples of the document have been attached to collection complaints.

    9.    With respect to the time-barred debt claim, it is reasonable to infer numerosity based on the following:

    a.    Unifund CCR Partners owns approximately $12 billion in charged-off debts, according to an interview of its principal executive officer in the Cincinnati Business Courier of September 3, 2007. Dan Monk, "Consumer debt? He loves it; Unifund thrives by taking on others' unpaid bills, to tune of $12 billion."

    b.    The limitations violation at issue represents Unifund CCR Partners' standard procedure. Unifund CCR Partners obtains no or virtually no documentation substantiating that the purported debtors actually owe any money to anyone. If it wanted such documentation, Unifund CCR Partners would have to pay more.

    10.    Plaintiff will obtain the exact number of class members through discovery, and requests a briefing schedule long enough to obtain such information.

    11.    There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members. The predominant common questions are: 1) whether the use of Appendix A as an attachment to Unifund CCR Partners' complaints without being sent to consumers prior to suit is a violation of the FDCPA, and 2) whether the filing of time-barred lawsuits is an unfair or deceptive practice in violation of

the FDCPA.

12. The only individual issue is the identification of the class members, a matter capable of ministerial determination from defendants' records and court files.

13. Plaintiff's claims are typical of those of the class members. All are based on the same factual and legal theories.

14. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in bringing class actions and collection abuse claims. (Appendix C) Plaintiff's counsel have sufficient resources to insure the vigorous prosecution of this action in the interests of the class members.

15. A class action is superior for the fair and efficient adjudication of the class members' claims, in that:

 b. Congress specifically contemplated FDCPA class actions as a principal means of enforcing the statute.

 c. Consumers are unlikely to recognize the violation, as it requires familiarity with the federal Communications Act.

 d. The practice causes substantial injury to the public.

 e. A class action is necessary to determine that defendants' conduct is a violation of law and bring about its cessation.

16. In further support of this motion, plaintiff submits the accompanying memorandum of law.

17. Plaintiff is filing this motion at this early time because of the decision in White v. Humana Health Plan, Inc., 06 C 5546, 2007 U.S.Dist. LEXIS 32263 (N.D.Ill., May 2, 2007).

WHEREFORE, plaintiff respectfully requests that this Court enter an order determining that this action may proceed as a class action.

                        Respectfully submitted,

                        <u>s/Daniel A. Edelman</u>
                        Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
      & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PAUL COX, individually and on behalf of the classes defined herein, | ) ) ) | 08-C-1005 |
| Plaintiff, | ) ) ) | Judge Guzman |
| | ) | Magistrate Judge Ashman |
| v. | ) ) | |
| UNIFUND CCR PARTNERS; CREDIT CARD RECEIVABLES FUND, INC., and ZB LIMITED PARTNERSHIP, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
<u>PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>**

Plaintiff has requested that this Court enter an order determining that this Fair Debt Collection Practices Act ("FDCPA") action may proceed as a class action against defendants Unifund CCR Partners, Credit Card Receivables Fund, Inc., and ZB Limited Partnership. This memorandum is submitted in support of that motion.

**I.      NATURE OF THE CASE**

This case complains of defendants' practice of using a standard form document filled out in a standard manner (<u>Appendix A</u>) in support of defendants' lawsuits against consumers. <u>Appendix A</u> is devised to appear to be a statement sent to the putative debtor in the ordinary course of business. For example, it states at the bottom, "To receive credit for payments as of the date of receipt, we must receive your check or money order at [address]." In truth and in fact, <u>Appendix A</u> is not sent to putative debtors, except as an exhibit to a collection complaint. Plaintiff never received <u>Appendix A</u> by mail. The purpose and effect of <u>Appendix A</u> is to falsely represent that the document

1

was sent to the putative debtor and not objected to.

This case also complains of a practice of filing time-barred lawsuits in the hope that the consumers will not realize that they are time-barred and pay or default. The alleged debt that was the subject of the lawsuit filed against plaintiff by defendant Unifund CCR Partners in the Circuit Court of DuPage County, Illinois, case no. 08 AR 22, had been charged off more than eight years prior to filing.

Plaintiff contends that Appendix A and other documents in the same form that are attached to complaints but not otherwise sent to putative debtors violate the FDCPA, 15 U.S.C. §§1692e, e(2)(A), and e(10). Plaintiff also contends that defendants violated the FDCPA, 15 U.S.C. §§1692e and 1692f, by filing suit against plaintiff and the members of the class on time-barred debts. Kimber v. Federal Financial Corp., 668 F. Supp. 1480 (M.D. Ala. 1987).

## II.     THE FAIR DEBT COLLECTION PRACTICES ACT

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors".  15 U.S.C. §1692(e).  It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. Mace v. Van Ru Credit Corp., 109 F.3d 338 (7th Cir. 1997); Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998); Baker v. G.C. Services Corp., 677 F.2d 775, 777 (9th Cir. 1982); McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information.  15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

In enacting the FDCPA, Congress recognized the  --

> **universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule [sic]. . . . [T]he vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.**

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 USCCAN 1695, 1697.

The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996); Gammon v. GC Services, LP, 27 F.3d 1254 (7th Cir. 1994). The standard is an objective one -- whether the plaintiff or any class member was misled is not an element of a cause of action. "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." Beattie v. D.M. Collections, Inc., 754 F.Supp. 383, 392 (D.Del. 1991).

Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. Cirkot v. Diversified Fin. Services, Inc., 839 F.Supp. 941 (D. Conn. 1993).

> **The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.**

N.C. Freed Co. v. Board of Governors, 473 F.2d 1210, 1214 (2d Cir. 1973).

Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. Bartlett v. Heibl, 128 F.3d 497, 499 (7th Cir.1997); Baker, 677 F.2d at 780-1; Woolfolk v. Van Ru Credit Corp., 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); Cacace v. Lucas, 775 F. Supp. 502 (D. Conn. 1990); Riveria v. MAB Collections, Inc., 682 F. Supp. 174, 177

(W.D.N.Y. 1988); <u>Kuhn v. Account Control Technol.</u>, 865 F. Supp. 1443, 1450 (D.Nev. 1994); <u>In re Scrimpsher</u>, 17 B.R. 999, 1016-7 (Bankr.N.D.N.Y. 1982); <u>In re Littles</u>, 90 B.R. 669, 680 (Bankr. E.D.Pa. 1988), aff'd as modified sub nom. <u>Crossley v. Lieberman</u>, 90 B.R. 682 (E.D.Pa. 1988), aff'd, 868 F.2d 566 (3d Cir. 1989).

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. <u>Crabill v. Trans Union, L.L.C.</u>, 259 F.3d 662, 666 (7th Cir. 2001); <u>Baker</u>, 677 F.2d at 780; <u>Whatley v. Universal Collection Bureau</u>, 525 F. Supp. 1204, 1206 (N.D.Ga. 1981). "Congress intended the Act to be enforced primarily by consumers . . . ." <u>FTC v. Shaffner</u>, 626 F.2d 32, 35 (7th Cir. 1980). "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them . . . ." <u>Pipiles v. Credit Bureau of Lockport, Inc.</u>, 886 F.2d 22, 27 (2d Cir. 1989).

Plaintiff need not prove intent, bad faith or negligence in an FDCPA case. The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary judgment for the plaintiff." <u>Cacace v. Lucas</u>, 775 F. Supp. at 505. <u>Accord</u>, <u>Turner v. J.V.D.B. & Associates, Inc.</u>, 330 F.3d 991, 995 (7th Cir. 2003); <u>Gearing v. Check Brokerage Corp.</u>, 233 F.3d 469, 472 (7th Cir.2000).

### III. STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers. As the court stated in <u>Eshaghi v. Hanley Dawson Cadillac Co.</u>, 214 Ill.App.3d 995, 574 N.E.2d 760 (1st Dist. 1991):

> **In a large and impersonal society, class actions are often the last barricade of consumer protection. . . . To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the**

> **wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action -- private suits or governmental actions -- have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.** (574 N.E.2d at 764, 766)

Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases. As a result, numerous FDCPA class actions have been certified. Shea v. Codilis, 99 C 57, 2000 WL 336537, 2000 U.S. Dist. LEXIS 4131 (N.D. Ill. Mar. 27, 2000); Roe v. Publishers Clearing House, 98 C 330, 1999 WL 966977, 1999 U.S. Dist. LEXIS 16249 (N.D. Ill. Sept. 30, 1999); Vines v. Sands, 188 F.R.D. 302 (N.D. Ill. 1999); Nielsen v. Dickerson, 98 C 5909, 1999 WL 350694, 1999 U.S. Dist. LEXIS 8334 (N.D. Ill. May 19, 1999); Sledge v. Sands, 182 F.R.D. 255 (N.D. Ill. 1998); Shaver v. Trauner, C.A. 97-1309, 1998 U.S. Dist. LEXIS 19648 (C.D. Ill. July 31, 1998); Davis v. Suran, 98 C 656, 1998 WL 474105, 1998 U.S. Dist. LEXIS 12233 (N.D. Ill. July 31, 1998); Francisco v. Doctors & Merchants Credit Service, Inc., 98 C 716, 1998 WL 474107, 1998 U.S. Dist. LEXIS 12234 (N.D. Ill., July 29, 1998); Keele v. Wexler & Wexler, 95 C 3483, 1996 WL 124452, 1996 U.S. Dist. LEXIS 3253 (N.D. Ill., March 18, 1996), aff'd, 149 F.3d 589 (7th Cir. 1998); Wells v. McDonough, 97 C 3288, 1998 WL 160876, 1998 U.S. Dist. LEXIS 4441 (N.D. Ill. Mar. 23, 1998); Miller v. Wexler & Wexler, 97 C 6593, 1998 WL 60798, 1998 U.S. Dist. LEXIS 1382 (N.D. Ill. Feb. 5, 1998); Wilborn v. Dun & Bradstreet, 180 F.R.D. 347 (N.D. Ill. 1998); Arango v. GC Services LP, 97 C 7912, 1998 WL 325257, 1998 U.S. Dist. LEXIS 9124 (N.D. Ill. 1998) (misleading collection letters); Avila v Van Ru Credit Corp., 94 C 3234, 1995 WL 683775, 1995 U.S. Dist. LEXIS 461 (N.D. Ill. 1995), aff'd, Avila v. Rubin, supra, 84 F.3d 222; Carr v. Trans

Union Corp., C.A. 94-22, 1995 WL 20865, 1995 U.S. Dist. LEXIS 567 (E.D. Pa. 1995) (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers); Colbert v. Trans Union Corp., C.A. 93-6106, 1995 WL 20821, 1995 U.S. Dist. LEXIS 578 (E.D. Pa. 1995) (same); Gammon v. GC Services, L.P., 162 F.R.D. 313 (N.D. Ill. 1995) (similar); Zanni v. Lippold, 119 F.R.D. 32, 35 (C.D. Ill. 1988); West v. Costen, 558 F. Supp. 564, 572-573 (W.D. Va. 1983) (FDCPA class certified regarding alleged failure to provide required "validation" notices and addition of unauthorized fees); Cheqnet Systems, Inc. v. Montgomery, 322 Ark. 742, 911 S.W.2d 956 (1995) (class certified in FDCPA action challenging bad check charges); Brewer v. Friedman, 152 F.R.D. 142 (N.D. Ill. 1993) (FDCPA class certified regarding transmission of misleading collection demands to consumers), earlier opinion, 833 F. Supp. 697 (N.D. Ill. 1993); Duran v. Credit Bureau of Yuma, Inc., 93 F.R.D. 607 (D. Ariz. 1982) (class certified in action complaining of unauthorized charges).

## IV.     THE PROPOSED CLASSES MEET THE REQUIREMENTS FOR CERTIFICATION

### A.     Rule 23(a)(1) -- Numerosity

Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "When the class is large, numbers alone are dispositive . . . ." Riordan, 113 F.R.D. at 62. Where the class numbers at least 40, joinder is generally considered impracticable. Cypress v. Newport News General & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); Swanson v. American Consumer Industries, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); Riordan, 113 F.R.D. 60 (10-29 sufficient); Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452, 463 (E.D.Pa. 1968) (25 sufficient); Sala v. National R. Pass. Corp., 120 F.R.D. 494, 497 (E.D.Pa. 1988) (40-50 sufficient); Scholes v. Stone, McGuire

& Benjamin, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (about 70).  It is not necessary that the precise number of class members be known.  "A class action may proceed upon estimates as to the size of the proposed class."  In re Alcoholic Beverages Litigation, 95 F.R.D. 321 (E.D.N.Y. 1982); Lewis v. Gross, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986).

The court may "make common sense assumptions in order to find support for numerosity."  Evans v. United States Pipe & Foundry, 696 F.2d 925, 930 (11th Cir. 1983).  "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination . . . Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable."  2 Newberg on Class Actions (3d ed. 1992), §7.22.A.

It is reasonable to infer that the number of class members exceeds the minimum necessary based on the following:

1. Appendix A is a standard form document, filled out in a standardized manner.

2. Unifund CCR Partners filed more than 500 lawsuits per month in the Circuit Court of Cook County alone during 2007.  Others were filed in other Illinois counties.

3. Since December 27, 2007, Unifund CCR Partners has filed over 1000 complaints in the Circuit Court of Cook County, Illinois.  Appendix B.

4. On information and belief more than 100 examples of the document have been attached to collection complaints.

5. Unifund CCR Partners owns approximately $12 billion in charged-

off debts, according to an interview of its principal executive officer in the Cincinnati Business Courier of September 3, 2007. Dan Monk, "Consumer debt? He loves it; Unifund thrives by taking on others' unpaid bills, to tune of $12 billion."

6. The limitations violation at issue represents Unifund CCR Partners' standard procedure. Unifund CCR Partners obtains no or virtually no documentation substantiating that the purported debtors actually owe any money to anyone. If it wanted such documentation, Unifund CCR Partners would have to pay more.

### B. Rules 23(a)(2) and 23(b)(3) – Predominance of common questions of law or fact

In this case, the "common nucleus of operative fact," Halverson, 69 F.R.D. at 335, is that defendants 1) use Appendix A as an attachment to complaints without being sent to consumers prior to suit, and 2) bring, or threaten to bring, lawsuits to collect debts incurred for personal, family, or household use that are over 5 years old. This gives rise to the predominant legal questions of (a) whether the use of Appendix A as complained of violates the FDCPA (b) whether defendants have a practice of filing lawsuits that are time-barred and (c) whether filing or threatening time-barred lawsuits violates the FDCPA.

The only individual issue is the identification of the class members, a matter capable of ministerial determination from defendants' records or court records.

Questions readily answerable from defendants' files do not present an obstacle to class certification. Heastie v. Community Bank, 125 F.R.D. 669 (N.D.Ill. 1989) (court found that common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank").

8

In any event, the Seventh Circuit has held that the need for "separate proceedings of some character . . . to determine the entitlements of the individual class members to relief" should "not defeat class treatment of the question whether defendants violated [the law]." Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004). "Once that question is answered, if it is answered in favor of the class, a global settlement . . . will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class member concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." Id.

### C.     Rule 23(a)(3) -- Typicality

The rule requires that the claims of the named plaintiff be typical of the claims of the class:

> **A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.**

De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

In the instant case, typicality is inherent in the class definition. By definition, each of the class members has been subject to the same treatment as the plaintiff. Plaintiff's claims and the claims of the class members all turn on the legality of the use of Appendix A and the filing or

9

threatening to file a lawsuit on time-barred debts.

    **D.**    **Rule 23(a)(4) -- Adequacy of representation**

The rule also requires that the named plaintiff provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992); accord, Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975); In re Alcoholic Beverages Litigation, 95 F.R.D. 321.

Plaintiff understands the obligations of a class representative, and has retained experienced counsel, as is indicated by Appendix C, which sets forth counsel's qualifications and resources.

The second relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiff are coincident with the general interests of the class. Here, both plaintiff and the class members seek monetary damages as the result of defendants' unlawful collection practices. Given the identity of claims between plaintiff and the class members, there is no potential for conflicting interests in this action. There is no antagonism between the interests of the named plaintiff and those of the class.

    **E.**    **Rule 23(b)(3) -- Class action is superior to other available methods of resolving this controversy**

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. Eovaldi v. First Nat'l Bank, 57 F.R.D. 545 (N.D. Ill. 1972). The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. Scholes, 143 F.R.D. at

189; Hurwitz v. R.B. Jones Corp., 76 F.R.D. 149 (W.D.Mo. 1977).  It is proper for a court, in deciding the "best" available method, to consider the ". . . inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually."  Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161, 1165 (7th Cir. 1974).

In this case there is no better method available for the adjudication of the claims which might be brought by each individual debtor.  The vast majority of debtors are undoubtedly unaware that their rights are being violated.  In addition, persons from whom defendants are attempting to collect allegedly delinquent debts are, by definition, unlikely to be able to pay to retain counsel to protect their rights on an individual basis.

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> **A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit.  This is particularly important where, as here, a large number of small and medium sized claimants may be involved.  In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .**

In re Folding Carton Antitrust Litigation, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court noted:

> **Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action.  As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis.  These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see**

> **e.g., <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiff to pool claims which would be uneconomical to litigate individually.')  The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.**

<u>Lake v. First Nationwide Bank</u>, 156 F.R.D. 615, 628-629 (E.D.Pa 1994).

Class certification will provide an efficient and appropriate resolution of the controversy.  <u>Zanni</u>, 119 F.R.D. 32.

**V.  CONCLUSION**

The proposed class meets the requirements of Rules 23(a) and (b)(3).  Plaintiff respectfully requests that this Court certify this action as a class action.

                               Respectfully submitted,

                               <u>s/Daniel A. Edelman</u>
                               Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
    & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
T:\20847\Pleading\P's Memorandum in Support of Class Certification_Pleading.wpd

## **CERTIFICATE OF SERVICE**

       I, Daniel A. Edelman, hereby certify that on July 23, 2008, the foregoing document was filed electronically. A copy of the foregoing document was served via the Court's ECF system on the following individuals:

Joseph P. Kincaid
jkincaid@smbtrials.com

Kathleen A. Kelley
kkelley@smbtrials.com

                                        s/Daniel A. Edelman
                                        Daniel A. Edelman