IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL COX, individually and on behalf of the classes defined herein,<br><br>Plaintiff,<br><br>v.<br><br>UNIFUND CCR PARTNERS; CREDIT CARD RECEIVABLES FUND, INC., and ZB LIMITED PARTNERSHIP,<br><br>Defendants. | No. 08 C 1005 |

### DEFENDANTS' RESPONSE BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Defendants, Unifund CCR Partners (hereinafter referred to as "Unifund"), Credit Card Receivables Fund, Inc. ("CCRF"), and ZB Limited Partnership ("ZBLP"), by and through their attorneys, Joseph P. Kincaid and Kathleen A. Kelley, for their Response in Opposition to Plaintiff's Motion for Class Certification, hereby state as follows:

### I. INTRODUCTION

In this action, Plaintiff, Paul Cox, is <u>not</u> alleging that he did not owe the subject debt or that he did not own a credit card issued by the original issuer (First USA Bank) listed on the "Unifund Statement." Rather, Plaintiff alleges that Unifund violated 15 U.S.C. § 1692e of the Fair Debt Collection Practices Act ("FDCPA") by filing collection complaints alleging an "account stated" when it had "no documentation substantiating that the purported debtors actually owe any money to anyone" and by attaching <u>Appendix A</u> – or documents in a similar form – to the complaint without first sending it to the debtor. (Cplt. ¶ 20). Additionally, Plaintiff alleges that Unifund violated §§ 1692e and 1692f by filing collection suits on time-


EXHIBIT D
Exhibits Omitted

barred debts as the collection complaints "did not have any written contract attached to it and did not allege any explanation for the absence of a written contract." (Cplt. ¶ 31).

As discussed below, having had similar proposed classes denied by the Northern District of Illinois, Plaintiff's counsel has now moved for this Plaintiff, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), to certify two (2) classes of debtors as follows:

> Class 1: Where Unifund attached a document similar to Appendix A[1] (the purported "account stated") to the debt collection complaint, and the purported "account stated" was not sent to the debtor before the collection complaint was filed.
>
> Class 2: Where Unifund filed suit on a credit card debt allegedly originated by First USA Bank where both the charge-off date and date of last payment were more than 5 years prior to the filing of the collection suit, where Unifund does not have any evidence of a written contract.

District courts have "broad discretion" whether to certify a proposed class, and the Plaintiff bears the burden of proving that certification – as to each class – is warranted. Ramirez v. Palisades Collection LLC, 2007 WL 4335293 at *1 (N.D. Ill. Dec. 5, 2007).

Notably, the FDCPA was never intended to – and does not – provide a federal remedy to enforce purported violations of state procedural rules.[2] In fact, the Seventh Circuit expressly rejected such a contention:

> *How does a violation of state law become a violation of the [FDCPA]? . . . . This is a stretch, and not merely semantically; it makes the federal statute a vehicle for enforcing a state law, and why would Congress want to do that?*

Olvera v. Blitt & Gaines, 431 F.3d 285, 287 (7th Cir. 2005); see also Beler v. Blatt, Hasenmiller, 480 F.3d 470, 472-73 (7th Cir. 2007) ("[I]t is far from clear that the FDCPA controls the contents of pleadings filed in state court."); Szabo v. Bridgeport Machines, Inc., 249 F.3d 672,

---

[1] A complete copy of the collection complaint that Unifund filed against Plaintiff Paul Cox is attached hereto as Exhibit A. The purported "account stated" document (and referred to in Plaintiff's FDCPA complaint as "Appendix A") is page 3 of this Exhibit.
[2] For example, while 735 ILCS 5/2-606 – an Illinois state procedural rule – states that a plaintiff must attach written contracts to the complaint, the FDCPA itself does not require debt collectors to do so.

677 (7th Cir. 2001) (stating that a district court may look "beneath the surface of a complaint" in order to determine if class certification is appropriate).

Class certification should be denied. For both of the above classes, *individualized proof is necessary for each potential class member and, moreover, is required to determine whether a purported class member actually even belongs in the classes.* For example, membership in "Class 1" requires a review into the records of Unifund, its collection counsel, and any prior account holders (including the original issuer of the debt), to determine if the debtor was sent an account statement before the collection suit was filed.

Similarly, membership in "Class 2" requires a review of Unifund's and its collection counsel's records to determine not only each debtor's "last payment date" and "charge-off date" but also a review of the account notes to determine if the debtor subsequently "acknowledged" the debt, which would toll the statute of limitations. Membership in "Class 2" also requires a review of Unifund's and the original creditor's records to determine for each debtor, *inter alia*, whether there is evidence that the debtor signed a credit card agreement. Because individualized proof is necessary for each potential class member for both classes, the purported classes do not meet the commonality requirement of Rule 23(a)(2) or the requirements of 23(b)(3).

## II. FACTS

### A. State Court Collection Case and Federal FDCPA Allegations

On February 8, 2008, Unifund filed the subject collection complaint in DuPage County, Illinois, against Plaintiff, Paul Cox, seeking to collect a credit card debt which Plaintiff originally owed to First USA Bank. (The collection complaint, in its entirety, is attached as <u>Exhibit A</u>.) Attached as exhibits to the collection complaint are an "Affidavit of Indebtedness" and a "Unifund Statement," which list the balance due on the date shown, the account number, and that

the account was originally issued by First USA. <u>Ex. A</u>. In state court, Plaintiff moved to dismiss the collection complaint pursuant to 735 ILCS § 5/2-606 and 225 ILCS 425/8b, the Illinois Collection Agency Act, because – similar to allegations Plaintiff made in his FDCPA complaint – Unifund did not attach the credit card agreement or assignment contracts to the complaint. (Plaintiff's motion to dismiss the collection complaint is attached as <u>Exhibit B</u>.) On May 30, 2008, Unifund nonsuited the case after the state court dismissed its complaint without prejudice.

On February 19, 2008, while the state court collection case was still pending, Plaintiff filed this class action against Unifund and two general partners of Unifund. Plaintiff alleges that Unifund violated the FDCPA by filing collection suits with an attached "Unifund Statement," when it had "no documentation substantiating that the purported debtors actually owe any money to anyone." (Cplt. ¶ 20). Additionally, Plaintiff alleges that Unifund violated the FDCPA by filing suits on time-barred debts, which Plaintiff erroneously defines as debts in which the last payment date and the charge-off date were more than 5 years prior to the filing of the collection suit and in which Unifund has no signed contract. (Cplt. ¶ 36). These two theories are described in more detail below. Notably, however, the basis for the alleged time-barred debt class (Class 2) mirrors the basis for the allegations Plaintiff set forth in its state court Motion to Dismiss – that Unifund did not attach the credit card agreement or assignments to the collection complaint.

### B. Unifund's Debt Accounts and Collection Complaints

As part of Unifund's business activities, Unifund purchases charged-off consumer receivables – including credit card debts – and attempts to recover those amounts legitimately owed by certain debtors. (Defendants' Answer to Cplt. ¶ 6). During and after purchasing credit card accounts, Unifund receives account information and documentation from the original creditor(s) and/or subsequent purchaser(s) of the accounts; however, the type and amount of

account documents and account information that Unifund is provided – as well as that which can be subsequently provided by the original creditor upon an additional/follow-up request – varies from account to account. (Affidavit of Kim Kenney, attached as Exhibit C, ¶ 4).

As with many other collection complaints filed on behalf of Unifund, the collection complaint filed against Plaintiff includes two exhibits, an "Affidavit of Indebtedness" and a "Unifund Statement." Prior to signing the "Affidavit of Indebtedness," Unifund's Customer Service Media Manager, Kim Kenney, and members of her media team, review various account screens in Unifund's computer system, which list various information about each purchased debt account, including: (a) the charge-off date; (b) the last payment date; and (c) account notes listing any correspondence that Unifund has had with the debtor (including any acknowledgement of the debt and/or agreement to pay the debt). Ex. C, ¶¶ 2-3.[3]

### III. LEGAL ANALYSIS

**A. Plaintiff Must Demonstrate That Both His Classes Meet Rule 23's Requirements.**

Any plaintiff seeking to certify a class must first show – as to each class – that the requirements of Rule 23 are satisfied. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 614 (1997); Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993). As such, Plaintiff must demonstrate that the elements of numerosity, commonality, typicality, and adequacy of representation are met and that the putative class falls within one of the three categories set forth in Rule 23(b). Amchem, 521 U.S. at 613-14. Failure to satisfy *any* of these requirements precludes certification of the class. Retired Chicago Police Ass'n, 7 F.3d at 596.

---

[3] Once the protective order is entered in this case, Unifund will produce the account documents currently in its possession which relate to Plaintiff's account. (Unifund will attempt to file these documents under seal as Exhibit D). Additionally, Unifund is currently working with its collection counsel to produce a random sample of collection complaints and account documents in Unifund's possession for a sample of debtors who fit the temporal definition of the purported classes and *potentially* meet all the class definitions. (Unifund will attempt to file those documents under seal as Exhibit E). However, as set forth below, class certification for any such debtors is not appropriate.

In ruling on a motion for class certification, the district judge may also evaluate the merits of the plaintiff's purported claims. Where, as here, the plaintiff seeks certification under Rule 23(b)(3), the court must "make a preliminary inquiry into the merits" of the claims, to decide whether "the difficulties likely to be encountered in the management of the class action" preclude certification. Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 676 (7th Cir. 2001).

> The proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class [has been rejected.] Before deciding whether to allow a case to proceed as a class action . . . a judge should make whatever factual and legal inquiries are necessary under Rule 23.

Id. Illinois' Federal District Courts have followed that mandate. See e.g., Dhamer v. Bristol-Myers Squibb Co., 183 F.R.D. 520, 529-30 (N.D. Ill. 1998) ("[A court] may look beyond the pleadings to determine whether the requirements of Rule 23 have been satisfied. . . . A court must understand the claims, defenses, relevant facts and applicable substantive law in order to make a meaningful determination of certification issues."); Foreman v. PRA III, LLC, 2007 WL 704478 (N.D. Ill. Mar. 5, 2007) ("If evidence relevant to class certification is 'intertwined with the merits' . . . the court's decision 'may involve some consideration of the factual and legal issues' underlying the claim.") (citing Williams v. Ford Motor Co., 192 F.R.D. 580, 584 (N.D. Ill. 2000). A rigorous analysis and consideration of the factual and legal issues comprising the plaintiff's cause of action are necessary to determine whether Rule 23 is satisfied. Gen. Tel. Co. v. Falcon, 457 U.S. 147, 160-61 (1982).

### B. Rule 23(a)(2)'s Commonality Requirement is Not Met Because There Are No Questions of Law or Fact Common to the Classes.

To meet Rule 23(a)(2)'s commonality requirement, Plaintiff bears the burden of demonstrating that there are questions of law or fact common to the class members. This burden is only met when the class claims arise out of a common nucleus of operative facts. Rosario v.

Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992); Pastor v. State Farm Mut. Auto. Ins. Co., 2005 WL 2453900 at *3 (N.D. Ill. 2005). "If the court is required to conduct individual inquiries to determine whether each potential class member falls within the class, the court should deny certification." Pastor, 2005 WL 2453900 at *2; see also Sparano v. Southland, 1996 WL 681273 (N.D. Ill. 1996) (the commonality requirement is not satisfied if the resolution of a common legal issue is dependant upon factual determinations that will be different for each class member).

Plaintiff's memorandum claims that the common questions are whether: (1) Unifund attached Appendix A or a similar form to collection complaints when that information was not sent to the debtor prior to filing suit; and (2) Unifund filed lawsuits to collect consumer debts in which over 5 years had passed since both the date of last payment and charge-off date, and Unifund does not have access to evidence to prove the existence of a written contract. (Memo p. 8). However, these so-called common questions cannot be resolved without a fact-intensive, individualized analysis that will differ for each class member.

With respect to purported "Class 1," Plaintiff alleges that Unifund never sent Appendix A or a similar form to the debtors prior to filing suit and that doing so would violate the FDCPA. With regard to this class, for each purported class member, the Court would be required to determine, *inter alia*: (a) if Unifund or a previous creditor sent Appendix A *or a similar form* prior to the filing date; (b) whether any "Account Statement" or other writing sent to any debtors (i.e., a credit card statement or validation letter) constitutes a "similar form;" and (c) even if the Court determines that no "similar form" had been sent, whether the particular debtor found the Appendix A confusing or misleading. Durkin v. Equifax Check Servs., 406 F.3d 410, 415 (7th Cir. 2005) ("[A] plaintiff's anecdotal proclamations of being confused will not suffice: a collection letter cannot be confusing as a matter of law or fact unless a significant fraction of the

population would be similarly misled."). These are clearly individual questions.

With respect to purported "Class 2," Plaintiff alleges that Unifund filed lawsuits on debts more than 5 years after the date of last payment and charge-off date. Plaintiff argues that Unifund does not have written contracts for those accounts and, as such, the 5 year, rather than 10 year, statute of limitations applies as provided by 735 ILCS §§ 5/13-205 and 13-206. However, for each purported class member of Class 2, the Court would be required to determine, *inter alia*: (a) the charge-off date; (b) the last payment date; (c) whether the debtor had subsequently "acknowledged" the debt;[4] (d) the exact documents and information that Unifund has in its possession relating to that account; and (e) the documents and information that are available to Unifund upon a request to the original creditor for such information – which necessarily require third-party discovery. Additionally, after conducting the above individual inquiries, the Court would then have to determine whether the available documentation and information prove that the debtor signed a contract and/or agreed to the credit terms, such as to satisfy § 5/13-206, *and* that any such contract was for the subject debt balance and interest rate. These individual inquiries – and variations in the available dates, information and documentation – will result in different factual and legal findings for each purported class member.

**Notably – in two (2) prior cases where Edelman, Combs, Latturner & Goodwin, LLC (hereinafter, "Edelman, Combs") served as plaintiff's counsel where the plaintiff claimed that the defendant debt collectors violated the FDCPA by allegedly filing suits on time-barred credit card debts – the Northern District courts <u>denied</u> class certification.**

---

[4] Acknowledging the debt would toll the statute of limitations and thus eliminate the alleged underlying wrong which Plaintiff claims violated the FDCPA. See, e.g., Abdill v. Abdill, 292 Ill. 231, 231-34 (Ill. 1920) ("No formal set of words is necessary to constitute an acknowledgment of a debt and a promise to pay it. An absolute acknowledgment of the continuance of the debt and a promise to pay it is sufficient, and any language of the debtor to the creditor clearly admitting the debt and showing an intention to pay it will take the case out of the statute [of limitations].").

In <u>Ramirez v. Palisades Collection LLC</u>, 2007 WL 4335293 (N.D. Ill. Dec. 5, 2007), the plaintiff was represented by Edelman, Combs and – similar to here – claimed that the debt collector failed to attach a copy of the credit card contract to the collection complaint, rendering the collection action subject to the five-year statute of limitations. <u>Id.</u> at *1. District Judge Conlon ruled that Rule 23(a)'s requirements were not satisfied, explaining at length:

> **[Plaintiff's class] definition requires an exhaustive, individualized inquiry into whether [the debt collector] can presently find, in its own files or those of another entity, a written contract to exclude a debtor from the class. These inquiries would require more than the purely ministerial investigation [Plaintiff] envisions. Because [the debt collector] is not the original creditor, determining whether a written contract exists may require the participation of third parties. The investigation the class definition requires may necessitate the court's review of an untold number of documents to determine whether they constitute written contracts between potential class members and [the original creditor]. [Plaintiff's] class definition is insufficient because determination of class membership would require onerous individualized inquiry.**
>
> **[T]he class definition would force the court to conduct too onerous an individualized inquiry. . . .**

<u>Id.</u> at *3, *5. Consequently, the Court denied the plaintiff's motion for class certification.

Similarly, in <u>Parkis v. Arrow Financial Services, LLC</u>, 2008 WL 94798 (N.D. Ill. Jan. 8, 2008), Edelman, Combs represented the plaintiff, who alleged that the debt collector violated the FDCPA by filing debts that were barred by the 5-year statute of limitations, because the debt collector failed to attach a written contract to the collection complaints. <u>Id.</u> at *2-3. District Judge Coar denied plaintiff's motion for class certification, explaining:

> **Plaintiff claims that Defendants sued for debts after the five year statute of limitations period had expired and omitted information from court filings regarding the date when the alleged failure to pay occurred, in order to conceal the statute of limitation problem. . . .**
>
> **In to resolve [the] question of fact [as to whether each potential class members' debt was beyond the five year statute of limitations], this court would have to look into the payment history of each putative class member to**

> determine whether the last payment date or charge-off date was more than five years prior to the filing of the debt-collection suit. Because the payment timing and history will be different for each putative class member, this would involve an individualized inquiry for each potential member. Thus, the commonality requirement is not met. . . .

Id. at *4.

The same logic applies equally here. Just as in Ramirez and Parkis, Rule 23(a)(2) is not met because each class "depends upon factual determinations that will be different for each class member." Individualized questions as to the documents that Unifund has or can obtain for each purported class member, and how those apply to class merits issues, preclude a finding of commonality. Both classes require individualized inquiries. Class certification should be denied.

**C. The Proposed Classes Cannot be Certified Because They Cannot be Identified.**

Before the Court can entertain whether the requirements under Rule 23 are satisfied, the class must be sufficiently defined so as to be identifiable. Pastor, 2005 WL 2453900 at *2; Ramirez, 2007 WL 4335293 at *3, *5. The definition of a proposed class must be "sufficiently definite to permit ascertainment of the class members." Alliance to End Repression v. Rochford, 565 F.2d 975, 977-78 (7th Cir. 1977). Class certification must be denied if the Court is required to conduct individualized inquiries to determine whether a potential class member actually fits within the class. Pastor, 2005 WL 2453900 at *2; Ramirez, 2007 WL 4335293 at *3, *5 (discussed at length in Part B above).

In Pastor, the plaintiff contended that the defendant wrongfully failed to pay benefits due to holders of auto insurance policies, including the $10 per day for each day their car was unusable. 2005 WL 2453900 at *2. Plaintiff moved for class certification. Id. at *3. However, the court refused to certify the purported class because it found that the class definition was inadequate as it "would require the court to . . . conduct individual inquiries to determine

whether a putative class member's car was unusable . . . to determine class membership." Id. Additionally, the court noted that the individualized inquiry necessary under the class definition was essentially tantamount to evaluating the merits of each class member's claim. Id.

Here, the purported classes suffer from the same problem as to which debtors actually fall within the class definitions. Additionally, evaluating class membership will – for some debtors – essentially be equivalent to determining the merits of certain class members' claims. The determination as to whether each purported class member fits within a class necessarily depends on (1) the documentation and information currently available to Unifund, as well as (2) documentation and information that can be obtained from third parties, and (3) whether this documentation and information either constitutes a "similar document" (for Class 1) or evidence of a written agreement to provide a 10 year limitations period (Class 2). As such, even identifying exactly which purported class members fit into Plaintiff's class definitions requires an individualized, account-by-account inquiry. Neither class can be identified for certain without such individualized inquires and, as such, the classes should not be certified under Rule 23.

### D. Rule 26(b)(3) is Not Satisfied Because Questions of Law or Fact Common to the Class Members Do Not Predominate Over the Questions Affecting Only Individual Class Members.

Plaintiff attempts to certify the classes under Rule 26(b)(3). In order to meet 23(b)(3)'s requirements, Plaintiff must demonstrate: (1) that questions of fact and law common to the class members predominate over questions affecting only individual class members; and (2) that the class action is superior to other methods for resolving the case. Notably, *"the predominance inquiry is far more demanding than Rule 23(a)'s commonality requirement."* Wahl v. Midland Credit, 243 F.R.D. 291, 299 (N.D. Ill. 2007) (citing Amchem Prods., 521 U.S. at 623-24); Foreman, 2007 WL 704478 at *11 (predominance standard is "a far more demanding analysis").

To satisfy the predominance requirement, Plaintiff must show that the liability questions are subject to class wide proof, rather than individual and fact intensive determinations. Williams v. Ford Motor, 192 F.R.D. 580 (N.D. Ill. 2000); Dhamer, 183 F.R.D. at 529. This requirement is not met unless "there exists generalized evidence that proves or disproves" the class's claims on a class-wide basis. Gonlon v. Ohio Sav. Bank, 1999 WL 965593 at *4 (N.D. Ill. 1999). If liability questions require individual and fact intensive determinations – such as here – common issues do not predominate. Williams, 192 F.R.D. at 584; see also Wahl, 243 F.R.D. at 299 (where individualized factual and legal inquiries are required, class certification is "not a superior method for resolving the controversy, since management of such issues by a court will not be efficient").

As set forth above, both Plaintiff's purported classes require individualized inquiries into fact-intensive, individual questions, such as, *inter alia*, what documents and information are available to Unifund and the original creditor(s) for each debtor – and – what correspondence (e.g., account statements) did Unifund, Unifund's collection counsel, the original creditor(s), and/or subsequent purchasers send to each debtor. After completing these individualized fact determinations, the Court would then have to conduct "mini-trials" as to the legal effect of each factual determination for the various class members.

For the purported "Class 1" – which Plaintiff refers to as the "False Account Stated"[5] class (Cplt. p. 6) – once the Court determined whether any account statements or validation letters had been sent to the potential class members by Unifund, its collection counsel, the original creditors, or subsequent purchasers – for each potential class member, the Court would

---

[5] Under Illinois law, an "account stated" is "an agreement between parties who have previously conducted monetary transactions that the account representing the transactions between them is true, and that the balance is accurate, together with a promise to pay such balance." Toth v. Mansell, 207 Ill. App. 3d 665, 671, 566 N.E.2d 730, 734-35 (1st Dist. 1990) (citations omitted).

then have to determine whether each document constitutes a document "similar to Exhibit A."

For the purported "Class 2" – once the Court determined exactly what documentation and information is currently available to Unifund and/or what can be obtained from the original creditor(s) – the Court must then determine whether that documentation proves that the 5- or 10-year statute of limitations applies to each particular account. Illinois law provides a 10-year statute of limitations for all "promissory notes, . . . written contracts, *or other evidences of indebtedness in writing*." 735 ILCS 5/13-206. Additionally, while bank credit cards – which involve a "tripartite relationship" between the bank, the cardholder and merchants – have the benefit of a 10-year statute of limitations, a department store credit card – which involves only two parties – is subject to a shorter 4-year limitation period. Harris Trust & Sav. Bank v. McCray, 21 Ill. App. 3d 605, 607-10 (1st Dist. 1974); see also Hamid, 2001 WL 1035726 at *2 (N.D. Ill. 2001) ("[I]f the financing is provided by a third party, then the suit is one based on the written contract to provide credit and the appropriate statute of limitations is ten years.").

Consequently, the limitation period depends on the nature of the credit relationship and whether there exists some "evidences of indebtedness in writing." Id. An unsigned credit agreement which was incorporated into the application or to which the debtor assented by using a credit card satisfies this requirement. Garber v. Harris Trust, 104 Ill. App. 3d 675, 432 N.E.2d 1039, 1311-12 (1st Dist. 1982). Additionally, the best evidence rule would allow Unifund to prove the existence of a signed agreement through testimony alone if the original documents were unavailable. FRE Rule 1004;[6] Harney v. U.S., 306 F.2d 523, 533-34 (1st Cir. 1962)

---

[6] Federal Rule of Evidence 1004 governs the "admissibility of other evidence of contents" of writings and provides that "[t]he original is not required, and other evidence of the contents of a writing ... is admissible if .... [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." Fed. R. Evid. 1004(1). "[M]ore often the only available evidence will be circumstantial, usually taking the form that appropriate search for the document has been made without discovering it." McCormick on Evidence § 237. "Factors such as the relative importance of the document and the lapse of time since it was last seen have been seen to bear upon the extent of search required before loss or destruction may be inferred. The only general requirement, however, should be that all

(holding that oral testimony is admissible when it is satisfactorily established that original documents are unavailable, by loss or destruction); U.S. v. Gerhart, 538 F.2d 807, 809 and n.2 (8th Cir. 1976) (same); King v. Kirkland's Stores, 2006 WL 2239203 at *5 (M.D. Ala. 2006).

At bottom, each class would require the Court to not only determine and identify all of the available individual evidence but also resolve what that evidence proved with regard to the Plaintiff's alleged class issues. Gathering such information would be far more complicated than a ministerial look into Defendants' files. As demonstrated above, this could entail complex factual and legal analyses for individual class members, which precludes the entry of class certification as to either proposed class.

In Thompson v. Spinelli, 2005 WL 2483376 (N.D. Ill. Oct. 5, 2005) – a case in which Edelman, Combs served as plaintiff's counsel – District Judge Darrah denied class certification because the Court found that Rule 23(b)(3) was not satisfied. The plaintiff alleged that the debt collector violated the FDCPA by sending form collection letters that falsely represented that the debtors had a duty to pay an credit card processing fee. Id. at *1. The Court determined that common issues did not predominate over questions affecting the individual potential class members "because each class members' agreement with the third-party creditor would require examination to ensure that the agreement [did] not authorize the collection of the subject fee." Id. at *3. Due to "the intensive analysis that would be required for each individual agreement for every class member," the Court ruled that the requirements of Rule 23(b)(3) were not satisfied. Id. See also, e.g., Thomas v. Arrow Financial Services, LLC, 2006 WL 2438346 at *5 (N.D. Ill. Aug. 17, 2006) (where District Judge Guzman found that the purported class would require highly individualized hearings, which would "transform the class action into an unmanageable

---

reasonable avenues of search should be explored to the extent that reasonable diligence under the circumstances would dictate." Id.

proceeding dominated by individual questions.").

Finally, as discussed in length in Part B above, two Northern District courts have already denied a plaintiff's motion for class certification where the purported class was defined as persons against whom the defendant debt collectors had filed time-barred debts. Ramirez, 2007 WL 4335293 at *3, *5 Parkis, 2008 WL 94798. In those cases, the District Court Judges denied class certification because Rule 23(a)(2)'s commonality requirement was not met. Id. Because the courts denied class certification on those grounds, those courts did not conduct any 23(b)(3) analysis. However, the Northern District courts hold that Rule 23(b)(3)'s "predominance inquiry is far more demanding than Rule 23(a)'s commonality requirement." Wahl, 243 F.R.D. at 299 (citing Amchem Prods., 521 U.S. at 623-24); Foreman, 2007 WL 704478 at *11. Consequently, as Rule 23(a)(2) was not met in Ramirez or Parkis, the district courts – had they conducted a 26(b)(3) analysis – would have necessarily found that the purported classes did not meet Rule 23(b)(3)'s more stringent requirements either.

### III. CONCLUSION

For all of the above reasons, defendants Unifund CCR Partners, Credit Card Receivables Fund, Inc., and ZB Limited Partnership, respectfully request that this Court deny Plaintiff's motion to certify the alleged two (2) classes.

Respectfully submitted,
/s/ Kathleen A. Kelley

Joseph P. Kincaid
Kathleen A. Kelley
Swanson, Martin, & Bell, LLP
330 N. Wabash Street, Suite 3300
Chicago, IL 60611
Telephone: (312) 321-9100
Fax: (312) 321-0990