

Slip Copy  Page 1
Slip Copy, 2008 WL 94798 (N.D.Ill.)
**2008 WL 94798 (N.D.Ill.)**

# EXHIBIT E

Parkis v. Arrow Financial Services, LLS
N.D.Ill.,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern Division.
John PARKIS, Plaintiff,
v.
ARROW FINANCIAL SERVICES, LLS and Blatt, Hasenmiller, Leibsker & Moore, LLC, Defendants.
**No. 07 C 410.**

Jan. 8, 2008.

Daniel A. Edelman, Francis Richard Greene, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL, for Plaintiff.
David M. Schultz, Corinne Cantwell Heggie, Hinshaw & Culbertson, Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

DAVID H. COAR, District Judge.
**\*1** Before this Court is Plaintiff's motion for class certification; Plaintiff's motion for summary judgment; Defendant Arrow's motion for summary judgment and Defendant Blatt's motion for summary judgment. For the reasons set forth below, Plaintiff's motion for class certification is DENIED; Plaintiff's motion for summary judgment is GRANTED as to the five year statute of limitations period and DENIED as to the FDCPA violation; Defendant Blatt's motion for summary judgment is GRANTED as to improper venue; and Defendants Blatt and Arrow's motions for summary judgment are DENIED as to all other claims.

**I. FACTS**

John Parkis is a resident of Illinois, having resided in Rockford, Illinois since August 2003. Parkis brings this action for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA") against Arrow Financial Services, LLC and Blatt, Hasenmiller, Leibsker & Moore. Arrow Financial Services, LLC ("Arrow") is a limited liability company that engages in the business of buying bad debts allegedly owed by consumers and enforcing the debts against the consumers. Arrow is a debt collector as defined by the FDCPA. Blatt, Hasenmiller, Leibsker & Moore ("BHLM" or "Blatt") is a law firm with offices in Chicago. BHLM's practice consists primarily of the collection from consumers of debts allegedly owed to others, through use of mail, telephones and legal proceedings. BHLM is a debt collector as defined by the FDCPA.

On or about July 9, 1999, Arrow acquired the right to collect a credit card debt allegedly owed by Plaintiff to Fleet Bank Services Corporation ("the Debt"). Plaintiff obtained the Fleet credit card when he resided in California in the 1990s. Plaintiff claims that according to Arrow's Collection Notes and Arrow's Vice President Brian Cutler's deposition, the last payment Plaintiff made on the Fleet credit card account was prior to July 9, 1999. The Debt was "charged-off" [FN1] on or about November 15, 1995. When Arrow acquired the Debt, it did not obtain documentation, such as monthly statements or credit applications, for Plaintiff's account from Fleet Bank Services Corporation, because Fleet did not have the documentation available.

> FN1. Both Plaintiff and Defendant agree that Fleet Services indicated to Arrow that Plaintiff's account was "charged off" on or about November 15, 1995. Neither party defines what "charged off" entails in the briefings. However, because there is no dispute as to this fact, this court will accept the "charge off" date as on or about November 15, 1995.

Arrow claims that it sent 16 letters and made 73 calls to Plaintiff in an attempt to collect the Debt. Plaintiff does not recall any contact with Arrow. Arrow's policy treats Illinois credit card debts as subject to the 10-year statute of limitation which applies to written contracts because credit cards are generally issued pursuant to a written card member agreement.

On or about May 11, 2005, Arrow referred Plaintiff's account to BHLM. BHLM sent an initial validation letter to Plaintiff on May 13, 2005 with FDCPA

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 2
Slip Copy, 2008 WL 94798 (N.D.Ill.)
**2008 WL 94798 (N.D.Ill.)**

disclosures, advising of BHLM's representation and the balance Arrow claimed Plaintiff owed. At the time of placement and before any calls or letters are sent, BHLM runs accounts through various "scrubs" [FN2] to ensure the data provided by its client is accurate. BHLM's attorney team is trained to look for statute of limitations issues. BHLM runs a scrub on accounts to detect any bankruptcy filings so BHLM does not collect on an account discharged to bankruptcy. BHLM runs address and phone number checks, and zip codes are manually reviewed by a senior level legal clerk to identify any bad zip codes. No letters or calls are sent or made on the collection floor until the report is released to the office services department after manual attorney review and the scrubs are complete. When an account makes it to the legal department, legal clerks review the account to ensure it is eligible for suit. The complaint is prepared by the law clerk who reviews the account information to ensure the suit is within the statue of limitations based on the type of account and in the right venue. An attorney then reviews the account and ensures there are not disputes, bankruptcies, payments or statute of limitations issues before signing the complaint.

> FN2. It is unclear from the briefing what a "scrub" entails. This court assumes it is a screening procedure used to validate client information.

***2** On or about October 14, 2005, BHLM filed a lawsuit on behalf of Arrow against Plaintiff in the Circuit Court of Cook County in an attempt to collect the Debt. BHLM's complaint had one exhibit attached to it: a document captioned *Affidavit of Indebtedness* executed by an account manager employed by Arrow. The affiant stated Plaintiff's account balance was $8,218.87, consisting of $5561.52 principal and $2657.35 in interest owed to Arrow on his Fleet Services account. When the Cook County sheriff attempted to serve the summons on the Plaintiff, he realized that Plaintiff did not reside in Cook County, as BHLM's records showed, but rather lived in Winnebago County. As a result, BHLM ran a second scrub and identified Plaintiff's correct residence in Winnebago County (Rockford). Plaintiff was served with an alias summons at his place of residence in Winnebago County. Plaintiff was unable to appear in Chicago on the return date and a default judgment was entered against him.

Plaintiff retained counsel, and claims that the default judgment was vacated and the case was transferred to Winnebago County. Plaintiff offers no information as to what happened after the transfer. Defendant claims it does not have knowledge of the vacated judgment or the transfer to Winnebago County. This is odd because presumably Plaintiff would have raised the limitations issue argued here in those proceedings and the Illinois court may have already decided that issue. However, if the parties do not believe that the status/disposition of the state case is important, this court will press the issue.

Plaintiff then brought the present action, alleging violation of FDCPA for Defendants' attempt to deceptively collect time-barred debts and sue in an improper venue. Plaintiff claims that Defendants engaged in deceptive debt collection when they regularly filed debt collection actions based on contracts not wholly in writing where the last payment date or charge-off date is more than five years prior to filing. Under Plaintiff's theory, because Defendants failed to attach a written contract between the credit card company and the Plaintiff (the basis on which the debt was being sued for), the claim is subject to a five year statute of limitations period. Defendants contend that the 10 year statute of limitations applies to credit card debts, and that Defendants properly sued for debt collection on October 14, 2005 for a debt that was "charged off" on November 15, 1995. Defendant and Plaintiff do not agree as to when the last date of payment occurred.

Plaintiff seeks class certification under two class definitions:

> (1) The Arrow class consists of (a) all individuals (b) against whom Arrow filed a lawsuit in the Illinois state courts, (c) to collect an alleged credit card debt (d) where defendants' records do not truthfully show that a payment was made within 5 years prior to the filing of the action, (e) which lawsuit was pending at any time during a period beginning on January 22, 2006 and ending on February 11, 2007. Persons against whom judgments were entered and not vacated or set aside are excluded.

***3** The BHLM class consists of (a) all individuals (b) against whom BHLM filed a lawsuit in the Illinois state courts, (c) to collect an alleged credit

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

card debt (d) where defendants' records do not truthfully show that a payment was made within 5 years prior to the filing of the action, (e) which lawsuit was pending at any time during a period beginning on January 22, 2006 and ending on February 11, 2007. Persons against whom judgments were entered and not vacated or set aside are excluded.

Before this court are (1) Plaintiff's motion for class certification; (2) Plaintiff's motion for summary judgment; (3) Defendant Arrow's motion for summary judgment; and (4) Defendant BHLM's motion for summary judgment. This opinion addresses all four motions.

**II. LEGAL STANDARD**

**A. Class Certification**

Rule 23 of the Federal Rules of Civil Procedure sets forth the relevant standards for maintaining class action suits in federal court. Under Rule 23(a), a proposed class must satisfy four conditions before a court will grant certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed.R.Civ.P. 23(a). In addition, the Plaintiff must satisfy Rule 23(b), which offers only three potential bases for a valid class action. See Fed.R.Civ.P. 23(b). In the case before the Court, Plaintiff seeks certification under Rule 23(b)(3), which authorizes class actions where the "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The burden of proof on a motion for class certification rests with the Plaintiff. See *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 162, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The FDCPA expressly provides for class actions. See 15 U.S.C. § 1692k(a)(2)(B).

**B. Summary Judgment**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, along with any affidavits, show there is no genuine issue of fact. Such a showing entitles the moving party to judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lucas v. Chicago Transit Authority,* 367 F.3d 714, 720 (7th Cir.2004). A genuine issue of material fact exists only when a reasonable factfinder could find for the nonmoving party, based on the record as a whole. The court does not weigh the evidence and it does not make credibility determinations. Instead, the court makes all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 436 (7th Cir.2000). If a party fails to present proof on an essential element of his or her case, then all other facts become necessarily immaterial. *Ribando v. United Airlines, Inc.,* 200 F.3d 507, 509 (7th Cir.1999).

**III. ANALYSIS**

**A. Class Certification**

I. Numerosity

**\*4** Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Although there is no "magic number" of class members for numerosity purposes, case law indicates that when a class numbers at least 40, joinder will be considered impracticable. *Swanson v. Am. Consumer Indus.,* 415 F.2d 1326, 1333 (7th Cir.1969). The Plaintiff estimates 59 people under the proposed Arrow class and 72 people under the proposed BHLM class. Based on these numbers, numerosity is satisfied.

Defendants claim that the class definitions are not objectively identifiable, and thus this court should deny class certification. In support of this contention, Defendants cite to *Oshama v. Coca-Cola Co.,* where the court stated that "an identifiable class does not exist if membership is contingent on a particular state of mind" where the court would have to conduct individual inquiries of each class member. 225 F.R.D. 575, 581 (D.Ill.2005). Defendants analogized this reasoning to the present case, arguing that defendant's knowledge or belief is contingent on the individual account documents of each class member, and that the account information is likely to be different based on the type of credit card (Discover, Fleet Visa, Chase, Bank of America) sued upon.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

*Oshama* is distinguishable from the present case, because Oshama involved determining the subjective beliefs of each purported plaintiff class member, not the beliefs of the defendants, as in the present case. The argument that class members held different types of credit cards with differing terms and conditions, requiring this court to conduct individual inquiries, will be taken up in the commonality discussion below.

Finally, Defendants assert that "it is common for a putative FDCPA class to exclude people who have filed by bankruptcy protection."Defendants rely on [Dechert v. Cadle Co., 333 F.3d 801 (7th Cir.2003)](), arguing that putative class members who have filed for bankruptcy must be excluded from the class, creating an imprecise, "moving target" class. *Dechert v. Cadle Co.* concluded that there was a conflict of interest between a bankruptcy trustee's duty to the individual claim and a class representative's duty to represent all class members equally. The Seventh Circuit ruled that having filed for bankruptcy, a FDCPA class representative could not have her bankruptcy trustee be the class representative. *Dechert v. Cadle Co.* bars a bankruptcy trustee from being the class representative for a FDCPA claim, but does not go so far as to exclude everyone who has filed for bankruptcy from the plaintiff class in a FDCPA suit, as Defendants suggest. Thus, the fact that some putative class members may have filed for bankruptcy does not disrupt the definition of the Plaintiff class.

ii. Commonality

Under [Rule 23(a)(2)](), there must be a question of law or fact common to the class. Commonality generally exists when the defendant has engaged in "standardized conduct" towards the members of the proposed class. [Smith v. Nike Retail Servs., Inc., 234 F.R.D. 648, 2006 WL 715788, at *4 (N.D.Ill. Mar.22, 2006)]()."A common nucleus of operative fact is usually enough to satisfy the commonality requirement of [Rule 23(a)(2)]().[Rosario v. Livaditis, 963 F.2d 1013, 1017 (7th Cir.1992)](). However, if resolving the common legal issue depends on factual determinations that would require individualized inquiry for each class member, commonality is not met. See [Sparano v. Southland Corp., 1996 U.S. Dist. LEXIS 17485, 1996 WL 681273 (D.Ill.1996)](). In the present case, Plaintiff asserts that the "common nucleus of operative fact" is the "standardized conduct" of the Defendants collecting on time-barred debts. Specifically, Plaintiff claims that Defendants sued for debts after the five year statute of limitations period had expired and omitted information from court filings regarding the date when the alleged failure to pay occurred, in order to conceal the statute of limitation problem, in violation of the FDCPA. Defendants contend that the class definition requires an individual inquiry into the information and documents for each class member. Defendants claim that because Arrow and BHLM sued on debts from Fleet Visa, Discover, Chase and Bank of America, the documents for each class member will be different depending on the different credit card companies. It is unclear from the evidence presented why documentation from the different credit card companies would be relevant to the statute of limitations inquiry in the present case. However, in the present suit, Plaintiff and Defendants dispute the fact that Plaintiff's Visa debt was beyond the five year statute of limitation. Defendants' Local Rule 56.1 Statement of Material Facts 12. In order to resolve this question of fact, this court would have to look into the payment history of each putative class member to determine whether the last payment date or charge-off date was more than five years prior to the filing of the debt-collection suit. Because the payment timing and history will be different for each putative class member, his would involve an individualized inquiry for each potential member. Thus, the commonality requirement is not met, and class certification is denied.

**B. Summary Judgment**

I. Statute of Limitations

**\*5** Plaintiff moves for summary judgment on the basis that defendant sued for debt collection outside of the statute of limitations period, violating the FDCPA. Under Illinois law, "actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing, shall be commenced within 10 years next after the cause of action accrued," but "actions on unwritten contracts ... shall be commenced within 5 years next after the cause of action accrued."[735 ILCS §§ 5/13-205]()-206. That is, if the action is found to be based on a written contract, the statute of limitations is 10 years from the cause of action, and if

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy    Page 5
Slip Copy, 2008 WL 94798 (N.D.Ill.)
**2008 WL 94798 (N.D.Ill.)**

the action is found to be based on an unwritten contract, the statute of limitations is 5 years from the cause of action. The existence of a contract between Plaintiff and Fleet Visa is undisputed, but the question remains whether the contract was written or unwritten.

There has been no evidence presented of a written contract, stating all the essential terms of an agreement. Illinois law requires that when "a claim is founded upon a written instrument, a copy thereof must be attached to the pleading as an exhibit or recited therein."Ill.Rev.Stat.1981, ch. 110, par. 36; O.K. Electric Co. v. Fernandes, 111 Ill.App.3d 466, 67 Ill.Dec. 225, 444 N.E.2d 264, 267 (Ill.App.Ct.1982); Plocar v. Dunkin' Donuts of America, Inc., 103 Ill.App.3d 740, 748, 59 Ill.Dec. 418, 431 N.E.2d 1175 (Ill.App.Ct.1981). Defendants did not provide a copy of a written credit card contract in their October 14, 2005 debt-collection complaint. Although the "Charge Agreement" was alluded to in the debt-collection complaint, the complaint did not include a recitation of the contract terms. Illinois statute also allows the pleader to include an affidavit stating facts showing that the instrument was not accessible to him or her, in which case the written contract would not be required to be attached. 735 ILCS 5/2-606. Defendants did not satisfy this provision either. Instead, Defendants attached an "Affidavit of Indebtedness", stating that the Plaintiff's account balance was $8,218.87, consisting of $5561.52 principal and $2657.35 in interest owed to Arrow on his Fleet Services account, and signed by an agent of Arrow. This document clearly does not constitute a written contract, as stating the amount owed by the Plaintiff falls far short of stating all the essential terms of a contract. See Brown v. Goodman, 147 Ill.App.3d 935, 101 Ill.Dec. 530, 498 N.E.2d 854 (Ill.App.Ct.1986). Further, Plaintiff argues that credit card issuers may issue cards by telephone or pre-approved offers without having a written contract for the consumer to sign. Both Plaintiff and Defendants agree that many card issuers can change the terms of the original contract at will, by simply sending notice to the consumer, where the use of the card without objection constitutes acceptance of the new terms. Defendants cite to *Garber v. Harris Trust & Sav. Bank,* where the Illinois appellate court ruled that "a contract is not formed at the time of issuance of the credit card ... a separate contract is created each time the card is used according to the terms of the card holder agreement at the time of such use."104 Ill.App.3d 675, 678, 60 Ill.Dec. 410, 432 N.E.2d 1309 (Ill.App.Ct.1982). Accordingly, it is unclear that even if an original credit card contract were available in writing, whether parol evidence would still be needed in order make the contract complete. In any case, because a written contract was not attached to the debt-collection complaint nor has any evidence been offered that a written contract exists, the contract must be considered "unwritten" under Illinois law. As such, the five year statute of limitation applies under Illinois law.

**\*6** Defendants rely on *Harris Trust & Sav. Bank v. McCray,* 21 Ill.App.3d 605, 316 N.E.2d 209 (Ill.App.Ct.1974) in arguing that all credit card agreements are considered written contracts. This is not a correct reading of *Harris Trust.*In that case, the Illinois court of appeals found that a credit card agreement constituted a contract for the loan of money, rather than a contract for the sale of goods. An action based on a contract for the loan of money has a statutory period of 10 years if it is found to be "written," whereas an action based on a contract for the sale of goods has a statutory period of four years under Illinois law. The court's analysis centered on whether a credit card agreement was a loan contract or a sales contract, not whether the agreement was written or unwritten. Thus, the reasoning and analysis in *Harris Trust* does not apply to the present case, where the issue is whether the Defendants sued on a written or unwritten contract.

The five year statutory period commences with either the charge off date or the last date of payment. Plaintiff and Defendants agree that the charge off date was on or about November 15, 1995. However, Plaintiff and Defendant do not agree on the last date of payment. Plaintiff asserts that the last date of payment was prior to Arrow's acquisition of the debt on or about July 9, 1999, falling outside of the five year statute of limitations period. Defendant disputes this date, but presents no evidence to the contrary or of an alternative date. Defendant answers Plaintiff's allegation that "Plaintiff had not made any payments on the debt since prior to 2000" by stating that "Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation."Further, Defendants did not include the date when the alleged failure to pay occurred in its debt-collection filings in state court. At this point of

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 6
Slip Copy, 2008 WL 94798 (N.D.Ill.)
**2008 WL 94798 (N.D.Ill.)**

the litigation, after discovery has closed, if Defendant has produced no evidence of an alternative date and Plaintiff has produced evidence that the last date of payment was prior to the debt acquisition date of July 9, 1999, as listed in Arrow's records, this court finds, based on the evidence presented, that the last payment date was prior to July 9, 1999. Thus, Defendant's October 14, 2005 filing fell outside the statute of limitations.

ii. FDCPA Violation

There is still a question of whether Defendants violated the FDCPA, having filed their debt-collection suit outside of the statute of limitations period. A central purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692e. Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including the false representation of "the character, amount, or legal status of any debt"; "the threat to take any action that cannot legally be taken or that is not intended to be taken"; and "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* §§ 1692e(2), (5) & (10). Similarly, § 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." This provision requires collection of debt to be "expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1). Courts view FDCPA claims "through the eyes of an 'unsophisticated debtor.'" *McMillan v. Collection Prof'ls Inc.,* 455 F.3d 754, 758 (7th Cir.2006) (quoting *Gammon v. GC Servs. Ltd. P'ship,* 27 F.3d 1254, 1257 (7th Cir.1994)).

**\*7** Plaintiffs contend that because the statute of limitations had expired, Defendants' allegation was a false representation of the legal status of the debt in violation of § 1692e(2), a threat to take an action which cannot be legally taken in violation of § 1692e(5), and a false representation to collect or attempt to collect the Debt in violation of § 1692e(10). Plaintiff asserts that the FDCPA is a strict liability statute, and Section 1692e does not require proof of intent. Further, Plaintiff alleges that Defendants' collection suit was also an unfair means to collect the debt in violation of § 1692f, because Defendants counted on Plaintiff not to recognize that the statute of limitations had expired. Thus, Plaintiff argues that simply by the act of collecting after the statutory period had expired, strict liability ensues and summary judgment should be granted to the Plaintiff.

Defendants' cross motion for summary judgment contends that (1) the FDCPA does not afford relief for a statute of limitation violation under state law, (2) BHLM's decision to apply the 10 year statute of limitation was a mistake of law and subject to the bona fide error defense, (3) litigation privilege shields BHLM and Arrow from any alleged claims based on the Complaint, and (4) Plaintiff's § 1692i violation is barred because BHLM adopted reasonable procedures to prevent suits from being filed in the wrong venue.

First, federal courts have recognized that attempts to collect on time-barred debts are actionable under the FDCPA. See *Stepney v. Outsourcing Solutions,* 1997 U.S. Dist. LEXIS 18264, 1997 WL 722972 (D.Ill.1997); *Kimber v. Federal Financial Corp.,* 668 F.Supp. 1480 (D.Ala.1987); *Beattie v. D.M. Collections, Inc.,* 754 F.Supp. 383, 393 (D.Del.1991). These courts reasoned that the "threatening of a lawsuit which the debt collector knows or should know is unavailable or unwinnable by reason of a legal bar such as the statute of limitations is the kind of abusive practice the FDCPA was intended to eliminate." *Id.* This court agrees with this reasoning, and finds the Plaintiff's claim to be actionable.

Second, as to the issue of strict liability, the FDCPA does not require a Plaintiff to show intentional conduct by the debt collector in order to be entitled to damages. *Gearing v. Check Brokerage Corp.,* 233 F.3d 469 (7th Cir.2000); *Russell v. Equifax A.R.S.,* 74 F.3d 30 (2d Cir.1996). However, although the act imposes strict liability, a debt collector may escape liability by asserting the bona-fide error defense, where the debt collector must demonstrate by a preponderance of the evidence that its violation of the act was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. *Id.;* 15 U.S.C.S. § 1692k(c). Defendant BHLM argues that its decision to apply the 10 year statute of limitations was a mistake of law, subject to the bona fide error defense. BHLM asserts that, because it believed the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

statute of limitation to be ten years, its filing of the collection suit was not an intentional violation of the FDCPA, but a bona-fide error. Further, BHLM contends that it maintained procedures that specifically worked to avoid such an error. These procedures involved compliance screenings for statute of limitation issues before an account would be transferred to BHLM's legal department, review by a trained law clerk for statute of limitation issues once the account reaches the legal department, and review by an attorney for statute of limitation issues before the suit is filed. BHLM maintains that this multi-layered checking procedure acts to avoid statute of limitation errors. Plaintiff contends that BHLM acted intentionally, and the error was not bona-fide. A reasonable jury could find that the screening procedures that assume a 10 year statute of limitation may not be reasonably adapted to avoid the error at issue, and that the error was not bona-fide. On the other hand, a reasonable jury may also find that BHLM's screening procedures were sufficient, and that its error was bona-fide and unintentional. Thus, there exists a genuine issue of material fact as to whether BHLM's error was bona-fide and unintentional. As such, summary judgment is denied to both the Plaintiff and the Defendants as to whether Defendants violated the FDCPA.

**\*8** Third, Defendants claim that state and federal litigation privileges shield Defendants from any alleged claims based on the debt-collection complaint. As an initial matter, state litigation privileges do not bar claims brought under federal law. Steffes v. Stepan Co., 144 F.3d 1070, 1073 (7th Cir.1998). The remaining question is whether federal litigation privileges shield Defendants in the present case. The FDCPA itself does not authorize any litigation privileges. Neither do the Defendants present any cases where federal litigation privileges barred filing a FDCPA claim for suing on time-barred debts. Rather, federal courts have entertained several cases where suing on time-barred debts in state court were alleged to violate the FDCPA. See Stepney v. Outsourcing Solutions, 1997 U.S. Dist. LEXIS 18264, 1997 WL 722972 (D.Ill.1997); Kimber v. Federal Financial Corp., 668 F.Supp. 1480 (D.Ala.1987); Beattie v. D.M. Collections, Inc., 754 F.Supp. 383, 393 (D.Del.1991). Litigation privilege provides litigants with unfettered access to the courts and opportunity to fully litigate their claims, without fear of tort liability in derivative litigation. This reasoning is not applicable to the present case, and this court finds no reason to bar this lawsuit on grounds of litigation privilege. Defendants' motion for summary judgment on the ground of litigation privilege is denied.

Finally, BHLM contends that Plaintiff's § 1692i violation for improper venue is barred because BHLM adopted reasonable procedures to prevent suits from being filed in the wrong venue. As discussed above, a debt collector may escape liability by asserting the bona-fide error defense, where the debt collector must demonstrate by a preponderance of the evidence that its violation of the act was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Id.; 15 U.S.C.S. § 1692k(c). BHLM contends that its procedures were reasonably adapted to avoid filing in an improper venue, including scrubbing the account name and address, reviewing the zip code information to check for correct venue, both electronically and by a senior level legal clerk, and sending various letters to what it believed to be Plaintiff's address. BHLM asserts that the address it had for the Plaintiff was in Cook County, and although this address was in error, BHLM believed it to be the right address and filed suit in Cook County. The error was unintentional and bona-fide, as the Cook County address was an old address for the Plaintiff, which had subsequently changed. It was not until the Cook County Sheriff failed to serve the summons and complaint in Cook County that BHLM learned of its error and scrubbed Plaintiff's account again, this time showing correctly that Plaintiff lived in Rockford in Winnebago County. Once BHLM learned that Plaintiff lived in Rockford, it did not move to transfer the case from Cook County to Winnebago County, where it would have been properly filed. Instead, BHLM filed a motion to appoint a special process server and issued alias summons to serve Plaintiff, remaining in Cook County court. Plaintiff claims that BHLM deliberately decided to proceed with a suit in the wrong venue, and that BHLM's bona fide defense fails because BHLM did not take corrective action even after it learned of its error. However, Plaintiff admits that, prior to summons, BHLM had no reason to believe the Cook County address was not good as BHLM had received no indication that the address was in error. BHLM did not receive a notice of change of address from the Accolade or the National Change of Address database, nor did it receive

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

returned mail from the United States Postal Service for mail sent to Plaintiff, nor did it receive any returned calls from the Plaintiff. Neither does Plaintiff provide any facts to demonstrate that BHLM intentionally filed in the wrong venue. BHLM has procedures to scrub and screen the address and zip code, in order to make sure that venue was proper. The preponderance of the evidence shows that BHLM did not intentionally file in the wrong venue, and acted in bona-fide error notwithstanding procedures reasonably adapted to avoid any such error. Absent any evidence to the contrary presented by the Plaintiff, there is not genuine issue of material fact, and a reasonable jury would not find for the Plaintiff. The fact that BHLM asked for a special process server in state court does not change this analysis. Summary judgment is granted to BHLM on the issue of improper venue.

iii. Defendant Arrow

**\*9** Defendant Arrow contends that it is not a direct debt collector under the FDCPA, and thus should be absolved of liability in this suit, or at best found vicariously liable for BHLM's actions. The FDCPA defines a "debt collector," in pertinent part, as:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another ... The term does not include... (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (iii) concerns a debt which was not in default at the time it was obtained by such person.

Arrow is a limited liability company that purchases bad, discharged or defaulted debts, originally owed to another. Arrow admits that it acts as a collection agency in certain circumstances, but denies that it acted as such in the case at hand. In the present case, Arrow acquired Plaintiff's bad debt from Fleet Bank, and attempted to collect the debt through 16 letters and 73 phone calls to Plaintiff. Arrow then referred the matter to BHLM, a law practice engaged primarily in the collection of debts from consumers allegedly owed to others. BHLM then filed a debt-collection suit on behalf of Arrow, where Arrow was named as the Plaintiff in the October 14, 2005 complaint. Under these circumstances, Arrow clearly qualifies as a debt collector under the FDCPA, as it "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (Fleet Visa in this case) and it attempted "to collect [a] debt owed or due or asserted to be owed or due another."

Having determined that Arrow is a debt collector as defined by the FDCPA, Plaintiff further asserts that Arrow is vicariously liable for the actions of BHLM, who was acting on its behalf to collect Plaintiff's debt. Arrow seems to deny any liability, including vicarious liability, in its initial memorandum of law in support of summary judgment, but later concedes in its response brief that Arrow may be vicariously liable for BHLM's act in accordance with *Schutz v. Arrow Fin. Servs., LLC,* 465 F.Supp.2d 872, 876 (D.Ill.2006). The case law is clear that a debt collector may be held vicariously liable for the collection activities of attorneys working on its behalf. *Id.; see also Fox v. Citicorp,* 15 F.3d 1507, 1516 (9th Cir.1994); *Scally v. Hilco Receivables, LLC,* 392 F.Supp.2d 1036, 1039 (N.D.Ill.2005); *Caron v. Maxwell,* 48 F.Supp.2d 932, 936 (D.Ariz.1999); *Alger v. Ganick, O'Brien & Sarin,* 35 F.Supp.2d 148, 153 (D.Mass.1999); *Randle v. GC Servs.,* 25 F.Supp.2d 849, 851 (N.D.Ill.1998); *Ditty v. CheckRite,* 973 F.Supp. 1320, 1333 (D.Utah 1997); *Farber v. NP Funding II L.P.,* No. CV-96-4322, 1997 U.S. Dist. LEXIS 21245, 1997 WL 913335 (E.D.N.Y. Dec. 9, 1997); *Kimber v. Fed. Fin. Corp.,* 668 F.Supp. 1480, 1486 (M.D.Ala.1987). Thus, in the present case, Arrow is a proper Defendant and is vicariously liable for the acts of BHLM.

**IV. CONCLUSION**

**\*10** For the foregoing reason, Plaintiff's class certification is denied; Plaintiff's motion for summary judgment is granted as to the five year statute of limitations and denied as to the FDCPA violation; Defendant Blatt's motion for summary judgment is granted as to improper venue; Defendants Blatt and Arrow's motions for summary judgment are denied as to all other claims.

N.D.Ill.,2008.
Parkis v. Arrow Financial Services, LLS

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2008 WL 94798 (N.D.Ill.)  
**2008 WL 94798 (N.D.Ill.)**

Page 9

Slip Copy, 2008 WL 94798 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.