

Slip Copy  Page 1
Slip Copy, 2008 WL 2692274 (N.D.Ill.)
**2008 WL 2692274 (N.D.Ill.)**

# EXHIBIT F

Sadler v. Midland Credit Management, Inc.
N.D.Ill.,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern Division.
Kenneth D. SADLER, II, on behalf of himself and a class, Plaintiff,
v.
MIDLAND CREDIT MANAGEMENT, INC.; MRC Receivables Corporation; and Encore Capital Group, Inc., formerly MCM Capital Group, Inc., Defendants.
**No. 06 C 5045.**

July 3, 2008.

Daniel A. Edelman, Cassandra P. Miller, Cathleen M. Combs, James O. Latturner, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL, for Plaintiff.
James William McConkey, Richard Eric Gottlieb, Renee Lynn Zipprich, Dykema Gossett PLLC, Chicago, IL, Theodore Wilson Seitz, Dykema Gossett, PLLC, Lansing, MI, for Defendants.

*MEMORANDUM OPINION AND ORDER*

REBECCA R. PALLMEYER, District Judge.
**\*1** Plaintiff Kenneth D. Sadler II asserts that the debt collection practices of Midland Credit Management, Inc. ("MCM"); MRC Receivables Corporation ("MRC"); and Encore Capital Group, Inc. ("Encore") (together, the "Defendants") violate the Fair Debt Collection Practices Act ("FDCPA"), specifically 15 U.S.C. §§ 1692e and 15 U.S.C. § 1692f. According to Plaintiff, Defendants threaten to bring and do in fact bring lawsuits against Illinois residents on time-barred debts, which is a deceptive and unfair practice. Plaintiff now moves for class certification. For the reasons explained here, Plaintiff's motion for class certification is denied.

*BACKGROUND*

**I. The Fair Debt Collection Practices Act**

A central purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). In relevant part, § 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and lists the following among examples of prohibited conduct: false representation of "the character, amount, or legal status of any debt," a "threat to take any action that cannot legally be taken or that is not intended to be taken," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e(2), (5) & (10). Similarly, the FDCPA prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Unconscionable and unfair conduct includes collecting any amount (*e.g.,* interest, fees, and other charges) unless the amount is "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Courts view FDCPA claims "through the eyes of an 'unsophisticated debtor.' " *McMillan v. Collection Prof'ls Inc.,* 455 F.3d 754, 758 (7th Cir.2006) (citation omitted).

**II. Defendants' Collection Attempts**

When evaluating Plaintiff's proposed class, the court does not presume that the allegations of Plaintiff's complaint are true but, rather, makes the factual and legal inquiries required by Rule 23. *Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 675-76 (7th Cir.2001); *Cicilline v. Jewel Food Stores, Inc.,* 542 F.Supp.2d 831, 835 (N.D.Ill.2008). Otherwise, there would be no opportunity to test the factual premises of the Plaintiff's complaint and the court's decision regarding class certification. *Szabo,* 249 F.3d at 676. These inquiries may require the court to look outside the corners of Plaintiff's complaint. While doing so, however, the court must "not delve into the merits of the ultimate issues in the case, which do not affect the question of class certification under Rule 23." *Cicilline,* 542 F.Supp.2d at 835.

With these principles in mind, it is useful to begin by assessing the collection attempts and practices detailed in Plaintiff's lawsuit. The underlying debt at

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2008 WL 2692274 (N.D.Ill.)  
**2008 WL 2692274 (N.D.Ill.)**

issue in this litigation was incurred on a First Consumer National Bank ("FCNB") credit card that Plaintiff obtained by responding to a solicitation, sometime between 1993 and 1995. (Defs.' Class Cert. Opp. at 2.) At the time, Plaintiff and his then-wife lived in North Carolina. (*Id.*) According to Plaintiff, the underlying debt was incurred for personal, family, or household purposes. (Docket Entry No. 1 ("Compl.") ¶ 23.) Defendants contend that Plaintiff's ex-wife made payments on the FCNB credit card until at least 1998. (Def.'s Class Cert. Opp. at 2.) and that the current balance Plaintiff owes on the account totals $527.09. (Letter from MCM to K. Sadler II of 4/28/06 (the "April 28 Letter"), Ex. A to Compl.)

**\*2** Defendant MRC purchased Plaintiff's account from FCNB on June 26, 2002. (Defs.' Class Cert. Opp. at 3.) MRC, a Delaware corporation with its principal place of business in San Diego, California, is in the business of buying charged-off debts. (Docket Entry No. 21 ("Ans.") ¶¶ 7-8.) Defendant MCM, a Kansas corporation with its principal place of business in San Diego, California, (Ans.¶ 11), is in the business of collecting debts for other, affiliated entities, including MRC. (Def.'s Class Cert. Opp. at 2.) Both MCM and MRC are subsidiaries of Defendant Encore, a Delaware corporation with offices in San Diego, California. (Ans.¶ 14.) In July 2002, after MRC purchased Plaintiff's account, Defendants claim that MCM sent Plaintiff a collection notice-addressed to his North Carolina home-which was returned as undeliverable. (Defs.' Class Cert. Opp. at 4.) Plaintiff now lives in Illinois, which is where subsequent letters were addressed. (*Id.*) MCM's notes reflect that MCM sent several letters regarding the account between August 26, 2002 and April 28, 2006. (Confidential Collection Detail, Ex. 5 to Defs.' Class Cert. Opp. at MCM 0010-15.) Notes from a March 30, 2006 telephone communication state that MCM was informed (though it is not clear by whom) that the bill was old and would not be paid. (*Id.* at MCM 0014.) Additional details-including the parties to the communications and the author(s) of the notes-are not available in the record.

Following that phone conversation, on April 28, 2006, MCM sent Plaintiff a letter regarding the account. (April 28 Letter.) This letter was accompanied by a form containing Plaintiff's account statement and payment slip. (Compl.¶¶ 26-28.) MCM sent the April 28 Letter on behalf of MRC, which holds title to the outstanding debt. (Ans.¶ 24.) The April 28 Letter informed Plaintiff that MCM was "considering forwarding this account to an attorney with the intent to initiate legal action to satisfy the debt," and suggested that Plaintiff contact MCM to "prevent any legal action on your account."(April 28 Letter.) Plaintiff apparently took no action, and, on June 7, an attorney for MCM advised Plaintiff by letter that MCM alleged that Plaintiff owed MCM a debt, and Plaintiff must contact the attorney's office to dispute the debt within thirty days, or "our client may consider additional remedies to recover the balance due."(Letter from J. Machol, Jr. to K. Sadler I I of 6/7/06 (the "June 7 Letter"), Ex. C to Compl.)

**III. Procedural History**

On September 18, 2006, Mr. Sadler filed this action against MCM, MRC, and Encore on behalf of himself and a class of purportedly similarly-situated individuals. (Compl.) Sadler asserts that there exists no written contract with respect to the underlying debt he owes. (Compl.¶ 31.) Any contractual obligation Plaintiff has to pay the debt must therefore result from an oral contract. Under Illinois law, written contractual obligations are subject a ten-year statute of limitations, 735 ILCS 5/13-206, but oral contractual obligations are subject to a five-year limitation period, 735 ILCS 5/13-205. While it is not precisely clear when the underlying debt went into default, the parties agree that it occurred more than five years before MCM sent the April 28 Letter in 2006. (Ans.¶ 32.) Thus, according to Plaintiff, the applicable statute of limitations had expired when MCM sent a letter referencing legal actions. (Compl.¶ 33.) An attempt to collect a debt outside the applicable statute of limitations violates 15 U.S.C. §§ 1692e & 1692f. *See Davis v. World Credit Fund I, LLC,* 543 F.Supp.2d 953, 957 (N.D.Ill.2008); *Ramirez v. Palisades Collection LLC,* --- F.R.D. ----, No. 07 C 3840, 2008 WL 835694, at \*3 (N.D.Ill. Mar.28, 2008)(*"Ramirez II"* ). Plaintiff therefore asserts that Defendants' collection attempts violated the FDCPA and seeks, among other relief, both actual and statutory damages. (Compl. at 8, ¶ 35.)

**\*3** Plaintiff now moves to certify a class that Plaintiff defines as: (1) all natural persons with Illinois addresses; (2) who were sued or received correspondence referring to "legal action;" (3) on or

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

between a date one year prior to the filing of this action and twenty days after the filing of this action; (4) with respect to a debt that was charged off five years or more prior to the filing of the lawsuit or the date of the correspondence; (5) as to which Defendants cannot produce a writing that identifies the parties, states the date of the agreement, contains the parties' signatures, and sets forth the terms of the parties' agreement. (Compl.¶ 37.) Defendant counters that Plaintiff's proposed class fails to fulfill the requirements for a valid class, under Federal Rule of Civil Procedure 23.

### DISCUSSION

**I. Legal Standard for Class Certification**

The FDCPA expressly provides for class actions. See 15 U.S.C. § 1692k(a)(2)(B). District courts have "broad discretion" to determine whether certification of a class is appropriate under Federal Rule of Civil Procedure 23. *Chavez v. Illinois State Police,* 251 F.3d 612, 629 (7th Cir.2001) (citation omitted). To obtain class certification, Plaintiff must establish the four prerequisites in Rule 23(a): (1) "the class is so numerous that joinder of all members is impracticable" (numerosity); (2) "there are questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (typicality); and (4) "the representative parties will fairly and adequately protect the interests of the class" (adequate representation). *Williams v. Chartwell Fin. Servs., Ltd.,* 204 F.3d 748, 760 (7th Cir.2000) (citing FED. R. CIV. P. 23(a)). Even if a plaintiff meets all of the 23(a) requirements, he or she must also satisfy one of the requirements set forth in Rule 23(b).*Id.* Here, Plaintiff seeks certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."FED. R. CIV. P. 23(b)(3).

**II. Identifiability of Proposed Class**

Before turning to the explicit requirements of Rule 23, the court pauses to examine Plaintiff's proposed class definition. Plaintiff bears the burden of proving that the class he proposes is, in fact, identifiable as a class.*Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir.2006). While Rule 23 does not include a "definiteness" requirement, the Seventh Circuit has accepted that the definition of a proposed class must be "sufficiently definite to permit ascertainment of the class members ..."*Alliance to End Repression v. Rochford,* 565 F.2d 975, 977-78 (7th Cir.1977), *abrogated on other grounds by Rahman v. Chertoff,* --- F.3d ----, No. 07-3430, 2008 WL 2521669 (7th Cir. June 26, 2008). This requirement is necessary because class actions bind all unnamed class members. *Elliott v. ITT Corp.,* 150 F.R.D. 569, 573-74 (N.D.Ill.1992). A class is considered identifiable if its members can be ascertained based on "objective criteria." *Lau v. Arrow Fin. Servs., LLC,* 245 F.R.D. 620, 624 (N.D.Ill.2007) (citation omitted). It is not fatal for a class definition to require some inquiry into individual records, so long as the inquiry is not "so daunting as to make the class definition insufficient."*Id.* If, however, the court would need to conduct individualized inquiries into each potential class member's claim to define the class, the class definition is deficient. *Id.* Put another way, Plaintiff's proposed class is identifiable only if the information necessary to identify those class members is available through a "ministerial review" rather than "arduous individual inquiry." *Ramirez II,* 2008 WL 835694, at *4.

*4 Bearing this in mind, the court analyzes the information available in MCM's databases. At the court's instruction, Defendant searched its records for potential class members in March 2008. (Decl. of Brian L. Frary ("Frary Decl.") of 5/5/08 ¶ 2, Ex. 2 to Defs.' Supp. Class Cert. Opp.) Based on the results of this search, the parties filed supplemental briefs regarding the identifiability of the proposed class. According to Defendants, Mr. Frary, the Corporate Counsel for MCM and Assistant Secretary for Encore and MRC, supervised the development of a query based on the objective criteria included in Plaintiffs' proposed class definition. (Frary Decl. ¶¶ 1-2.) The query identified accounts in which (1) MCM sent what Frary describes as "a 3A68 Pre-Legal letter," seeking to collect on a debt, to Illinois consumers between September 18, 2005 and October 8, 2006; and (2) the 3A68 Pre-Legal letter was sent more than five years after the charge-off date. (*Id.* ¶ 2.) The first part of the query targets the first three criteria in Plaintiff's proposed class definition (identifying (1) Illinois residents; (2) who received Mr. Frary's

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

correspondence referring to legal action; (3) in the identified timeframe). The second part of the query focuses on the fourth criterion in Plaintiff's proposed class definition (the letter was sent at least five years after the charge-off date). There was apparently no search parameter capable of targeting the fifth class criterion (no written contract exists to govern the account). MCM excluded from its search any accounts that did not meet the query criteria, and pulled the accounts that did. (*Id.*) MCM refined the search by trial and error, and eventually retrieved a list of approximately 12,000 accounts. (*Id.* ¶ 3.) From that group of 12,000, MCM randomly selected fifty account files to quality-check the accuracy of the filters applied. (*Id.*)[FN1] To perform the quality check, MCM staff typed the fifty account numbers into two separate, non-interfacing databases and obtained complete account history and supporting documentation for the fifty accounts. (*Id.* ¶ 4.)

> [FN1.] Defendants refer to the fifty accounts for which full account information was pulled. (Defs.' Supp. Class Cert. Opp. at 3.) Defendants also claim, however, to have produced account information for fifty-five accounts. (*Id.* at 3 n. 4.) The court will assume for purposes of this opinion that Defendants actually reviewed fifty-five account files.

An individualized evaluation of the fifty-five account files revealed that many do not meet the proposed class criteria. The parties agree that at least eleven accounts retrieved by MCM's search fall outside the proposed class: at least ten had charge-off dates of less than five years earlier, and one consumer identified was never sent the 3A68 Pre-Legal letter. (Defs.' Supp. Class Cert. Opp. at 4; Pl.'s Resp. to Defs.' Supp. Class Cert. Opp. at 7-8). If this failure rate of 20% is constant across the 12,000 accounts identified by MCM's query, nearly 2,400 of the identified accounts will fall outside Plaintiff's proposed class definition. Notably, Defendants assert that the March 2008 search utilizes "the only search filters MCM's system is capable of applying" (Defs.' Supp. Class Cert. Opp. at 2), and Plaintiff does not disagree. Nor does Sadler suggest that the fifty-five account files Defendants selected for its quality check are in any way non-representative of the 12,000 identified accounts. The 2,400 false positives the search identified demonstrate that an individual evaluation of each of the 12,000 accounts would be necessary to confirm the results of the query. This raises significant questions about the propriety of a class action lawsuit. *Cf. Parkis v. Arrow Fin. Servs., No. 07 C 410, 2008 WL 94798, at \*4 (N.D.Ill. Jan.8, 2008)* (denying class certification due to lack of commonality in a FDCPA action involving allegations of collection on time-barred debts: "this court would have to look into the payment history of each putative class member to determine whether the last payment date or charge-off date was more than five years prior to the filing of the debt-collection suit. Because the payment timing and history will be different for each putative class member, [t]his would involve an individualized inquiry for each potential member.").[FN2]

> [FN2.] Defendants suggest that several other within the fifty-five may also fail to meet the class criteria. For example, the parties dispute whether one account included a signed, written credit card agreement. (Defs.' Supp. Class Cert. Opp. at 5; Pl.'s Resp. to Defs .' Supp. Class Cert. Opp. at 1-5.) Furthermore, in addition to the ten accounts that undisputedly include charge-off dates of less than five years, Defendants contend (and Plaintiffs dispute) that one additional account also had a charge-off date of less than five years, (Defs.' Supp. Class Cert. Opp. at 4.) Defendants also suggest that for at least ten accounts, there is evidence that the debtor made a partial payment on the debt, thereby tolling the statute of limitations on collectability and eliminating the consumer from the class. (Defs.' Supp. Class Cert. Opp. at 5.) Finally, Defendants point out that in six accounts, the consumer acknowledged the debt subsequent to the charge-off date. (Defs.' Supp. Class Cert. Opp. at 4.) According to one court, acknowledgment of a debt tolls the statute of limitations. *Richburg v. Palisades Collection LLC,* 247 F.R.D. 457, 463 (E.D.Pa.2008). The court need not resolve these factual disputes for purposes of this opinion but notes that there is reason to believe that the failure rate for the filters Defendants utilized may be higher than 20%.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

*5 Moreover, certain information necessary to determine whether an individual is part of the class is not in MCM's files at all. For some accounts (though neither Frary nor counsel makes the precise number clear), account statements and applications are available only upon request to the original creditor. (Frary Decl. ¶ 5; *see also* MCM Media Availability for Portfolio 468, Ex. 3 to Defs .' Supp. Class Cert. Opp. (supporting documentation may be ordered until May 31, 2009).) Apparently, then, MCM might obtain a written contract related to an individual account at issue, were it to contact the original creditor to request the documentation. Plaintiff's suggestion that Defendants cannot identify a single, written contract for any member of the proposed class (Pl.'s Resp. to Defs.' Supp. Class Cert. Opp. at 12), is therefore premature. That Defendants have not yet produced a written contract relating to any account does not mean that they could not do so. But as one court in this district as held, requiring Defendants to produce these contracts is a substantial burden: where a proposed class definition "requires an exhaustive, individualized inquiry into whether [a debt collector] can presently find, in its own files or those of another entity, a written contract to exclude a debtor from the class," the class definition is inadequate.*Ramirez v. Palisades Collection LLC,* No. 07 C 3840, 2007 WL 4335293, at *3 (N.D.Ill.Dec.5, 2007) (*"Ramirez I"*). As the *Ramirez* court held, this would demand that the debt collector undertake more than a "purely ministerial investigation." *Id.* For example, original creditors-not parties to the lawsuit-would be required to participate in that investigation. *Id.* In *Ramirez,* the plaintiff's motion for class certification was ultimately denied based on the plaintiff's "insufficient" class definition. *Id.*[FN3]

> FN3. Ultimately the plaintiff cured this defect by amending its class definition. *Ramirez II,* 2008 WL 835694. As amended, the class included accounts where the debt collector did not attach a signed written contract to its complaint. *Id.* at *1-2. The court presumed that, when the debt collector failed to attach a written contract to the complaint, the underlying contract was unwritten. *Id.* at *3. The court found that determining whether a signed, written contract was attached to the underlying collection complaint might be administratively burdensome but would "not require arduous individual inquiry." *Id.* at

*4. In other words, by focusing on whether a written contract was attached to the complaint, the plaintiff's amended class definition eliminated the need to determine whether a written contract existed.

The analysis of one California court is likewise instructive. That court held that where nothing in the company's databases "shows or could show" whether individuals should be included in the proposed class, the class definition fails. *In re Wal-Mart Stores, Inc. Wage & Hour Litig.,* No. C 06-2069 SBA, 2008 WL 413749, at *8 (N.D.Cal. Feb.13, 2008).In *Wal-Mart,* the relevant proposed subclass was of former Wal-Mart employees, who were ultimately paid all wages they earned but, upon either being discharged or quitting, received their final pay late, in violation of California law. *Id.* at *1-2.To trigger the relevant state law, however, an employee who quit his or her job must provide notification of termination and either come to the store to receive final pay or give his or her former employer specific mailing instructions. *Id.* at *8. Unless the employee did so, there could be no violation of state law. *Id.* For employees who quit their jobs, Wal-Mart's databases did not provide records of either termination dates or the dates employees made themselves available for final pay. *Id.* at *9. Wal-Mart was not statutorily obligated to keep electronic databases containing this information. *Id.* Because Wal-Mart did not do so, the proposed subclass was not ascertainable and the court refused to certify it. *Id.* Similarly, here, there is no way for Defendants to discern from their databases whether the fifth criterion of Plaintiff's proposed class definition is met: whether a written contract exists for the account in question. And there is no obligation for Defendants to keep this information in its electronic databases. Consequently, the class is not "identifiable."

*6 In addition, MCM could not ascertain certain critical information either from its own files or by contacting the original creditor. For certain accounts (though the precise number is not clear), the account files indicated that the consumer had moved from the state of Illinois, and MCM could not determine whether the consumer had received a 3A68 Pre-Legal letter. (Frary Decl. ¶ 6.) In other words, it is possible that the consumer never received anything that could be construed as a threat of legal action, thereby excluding the consumer from the proposed class. To

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2008 WL 2692274 (N.D.Ill.)  
**2008 WL 2692274 (N.D.Ill.)**

Page 6

assess whether either of these groups of consumers belongs in the class, MCM asserts that it would be required to evaluate the individual facts of each account. (Defs.' Supp. Class Cert. Opp. at 4.) Because this information is not available within MCM's records, to find it could require an onerous inquiry. This inquiry would involve determining when consumers resided in Illinois, and whether they recalled receiving pre-legal communications from MCM. In other words, the inquiry would involve an impermissible investigation of the merits of every potential class member's claim. Neither Plaintiff nor the court has identified any alternative means of finding this information. Thus, the difficulty of determining whether any account falls into the proposed class renders class treatment of this case unmanageable.

## *CONCLUSION*

For the reasons stated above, the court denies without prejudice Plaintiff's motion for class certification (49).

N.D.Ill.,2008.  
Sadler v. Midland Credit Management, Inc.  
Slip Copy, 2008 WL 2692274 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.