Page 1

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

---

CHRISTINA GORAY,

    Plaintiff,

vs.

UNIFUND CCR PARTNERS; MARVIN S.C. DANG; JAE B. PARK; STUART MARTINEZ,

    Defendants.

CIVIL NO. 06-00214 HG/LEK

---

Deposition of: JEFFREY A. SHAFFER

Taken: By the Plaintiff Pursuant to Agreement

Time: Commencing at 10:28 a.m.

Place: Sheraton Airport
Executive Board Room
2826 Terminal Drive
Hebron, Kentucky 41048

Before: S. Diane Farrell, RMR, CRR
Sherry Music, Videographer
Notaries Public -
Commonwealth of Kentucky

© Ace-Merit, LLC   (513) 241-3200
30 Garfield Place, Suite 620   Cincinnati, Ohio 45_



EXHIBIT H

Page 22

1  A. Correct.
2  Q. Let's go to inquiry area number 2, the
3  forms/notices generated by Unifund for the collection
4  of consumer debts from 2004 to the present. Do you
5  have any such forms?
6  A. Can you help me out with what a -- what
7  you mean by a form or a notice?
8  Q. Yes. Does Unifund ever send notices
9  directly to consumers saying, you know, Mr. or
10 Ms. Consumer, you owe Citibank, you know, $5,000, we
11 got assigned this debt, please pay us? Anything like
12 that?
13 A. Yes, we do that on some particular
14 segments of a portfolio. Between 2004 and to the
15 present we've had different policies, so in the last
16 year, the policy would be yes, we have sent letters
17 to debtors in that regard.
18      From 2004 to 2006, the answer would
19 probably be no to that. We didn't -- we didn't
20 really send letters to a debtor unless they
21 specifically called in to Unifund asking for a letter
22 or a settlement or account information.
23 Q. Well, how would that debtor know that
24 Unifund has the debt if they were never notified
25 prior?

Page 23

1  A. Well, they would have been notified from
2  Citibank or Citibank's collection agency or whoever
3  the creditor was. Once we purchase the debt, we sell
4  a lot of our -- our accounts. So when we sell it,
5  our sales customers would typically be a collection
6  agency or a collection law firm. And they would send
7  the letter to the debtor or make the phone call to
8  the debtor.
9       If the account ended up in our legal
10 network, then our attorneys all send a letter
11 immediately once they receive the placement on the
12 account.
13 Q. Okay. So in this case, which I guess goes
14 to number 3, did Unifund send any kind of notice to
15 Christina Goray?
16 A. I don't believe so.
17 Q. Was that because this account was
18 transferred to Unifund prior to 2006?
19     MS. KANE: Objection. I think that
20     question is vague and ambiguous.
21 Q. Can you answer the question?
22 A. I'm not sure I understand the question.
23 Q. Okay. Do you remember when Unifund
24 obtained Christina Goray's account?
25 A. Sometime in 2005.

Page 24

1  Q. Okay. So in 2005 it was Unifund's policy
2  not to send, I'll call it collection notices, to the
3  individual consumers?
4  A. That's fair.
5  Q. Okay. And is that the reason why none
6  were sent to Ms. Goray?
7  A. Could be, but even under our current
8  policy, I wouldn't say that she would have, for
9  certain, gotten a letter under our current policy of
10 accounts either.
11 Q. Okay. But it's for sure that -- that no
12 notices were sent to Ms. Goray by Unifund requesting
13 payments?
14 A. I believe that's correct.
15 Q. Okay. And is -- is the first contact then
16 Unifund would have with Ms. Goray would be the Marvin
17 Dang's letter to her?
18 A. Yes, I believe so.
19 Q. How about the method of calculating
20 interest on consumer debt? How is that done?
21     MS. KANE: Objection. Ambiguous as to
22     time frame.
23 Q. Can you answer the question?
24 A. Are you referring to Unifund's policy for
25 calculating interest?

Page 25

1  Q. Yes, yes.
2  A. And are you referring to our current
3  methodology?
4  Q. Well, let's -- let's go back to the
5  original policy then. Has it changed since the
6  original policy?
7      MS. KANE: Objection. Assumes facts not
8      in evidence. It is also very ambiguous and may
9      call for speculation.
10 Q. Well, let's go -- let's follow up with
11 your answer then. What is the present policy?
12 A. We take an account, upon import, when we
13 import it into the system, and we apply a simple
14 interest formula to the balance from chargeoff to the
15 time that we purchased the account. And then from
16 the day that we purchase it going forward, we
17 compound interest, calculating that on a monthly
18 basis.
19 Q. Okay. Has that policy been different in
20 the past?
21 A. It's been that way for a long time, so
22 certainly while we had -- certainly 2004 to the
23 present, that's been our policy.
24 Q. Okay. So when Unifund received Christina
25 Goray's account in 2005, the interest that's

7 (Pages 22 to 25)

**Page 42**

1   Q. Okay. And that's only in response to a
2 request from the attorney for that particular
3 document?
4   A. We would have chargeoff statements, last
5 activity statements, any statement on the account or
6 the application, if it was available, or the
7 cardholder agreements, would all be a request in to
8 Citibank. Citibank would forward us hard copy pieces
9 of paper that we would scan into our system.
10      If our attorney has the ability to get
11 that electronically, then we would do that, send that
12 to them electronically. Otherwise it would get sent
13 them to them on a piece of paper. So we would
14 reprint what we've scanned and send to our attorney,
15 like Marvin Dang.
16   Q. Okay. And beside these -- this two pages,
17 Exhibits 42 and 43, what other hard copies pertain to
18 Christina Goray that Unifund received from Citibank?
19   A. I believe there's some account statements,
20 a chargeoff statement, and some earlier statements
21 going back to 2006 maybe and 2005 even. And I don't
22 know how many offhand there were, but there were a
23 number of account statements.
24   Q. Thank you. Handing you what's previously
25 been marked as Exhibits 5, 6, 7, 8, 9, 10 and 11, can

**Page 43**

1 you identify what those documents are?
2   A. These look to be the statements that I was
3 referring to, being sent to Christina Goray.
4   Q. Okay. So these are the hard copies that
5 were received from Citibank?
6   A. These are reproductions of hard copies
7 that were sent from Citibank, yes.
8   Q. Okay. At the top right-hand corner there,
9 there's a date of 2/22/06. What does that represent?
10   A. I'm not familiar with any of the codes
11 there. That appears to be a date, but that's nothing
12 that Unifund added to an account.
13   Q. Do you know what the word "Site: KC-CL"
14 means on Exhibit Number 5?
15   A. No, I'm not certain of what that is.
16 Citibank does have locations in Kansas City, but
17 other than maybe being a state code, I'm really not
18 familiar with what that is.
19   Q. This particular document, Exhibit Number
20 5, supposedly is a statement, closing date of July
21 7th, 2003. Do you see that in about the middle left
22 corner of the page?
23   A. Yes, I do.
24   Q. So is it fair to say that because this is
25 supposedly a 2003 statement, that Exhibit 5 is not a

**Page 44**

1 direct or exact duplicate of what may have been sent
2 to Ms. Goray, because we have a 2/22/06 date in the
3 right -- top left corner?
4   A. I believe that the stuff on the top
5 right-hand corner is added at Citibank at the time
6 that they reproduce the document, but that's just
7 speculation on my part.
8   Q. Okay. And for all of the exhibits from 5
9 to 11, you don't have any information, as to
10 explanation of the top right-hand corner information,
11 what that all means?
12   A. I don't.
13   Q. Okay. I'm handing you what previously has
14 been marked as Exhibit Number 1. It's a Unifund
15 statement with a date of 4/25/2005 at the -- at the
16 top. Do you see that, Mr. Shaffer?
17   A. Yes.
18   Q. What is this particular statement?
19   A. This is a statement that is generated at
20 the time that the affidavit is printed on the account
21 that we were previously discussing and is sent to the
22 attorneys.
23   Q. Okay. This particular statement is not
24 sent to Ms. Goray?
25   A. Correct.

**Page 45**

1   Q. Okay. And it looks like it should be,
2 because you have all the Fair Debt Collection
3 Practices warnings at the bottom and things like
4 that. Is there a reason all that information is
5 there?
6   A. We try to print those warnings on every
7 document just in case an attorney includes it to --
8 in a communication to a consumer or something --
9 something by chance gets in the hands of the
10 consumer, that it has the appropriate warnings on all
11 of our documents.
12   Q. Okay. Strictly, though, this is in
13 conjunction with the affidavit of indebtedness that
14 is sent to the -- Marvin Dang's office?
15   A. Yes. I believe they're printed at the
16 same time or they're printed in conjunction with each
17 other, in close proximity.
18   Q. Okay. And this is one of the hard copies
19 that got sent to Mr. Dang's office?
20   A. I believe so.
21   Q. In this particular case, the lawsuit
22 requested 27 percent interest. And I'm referring to
23 Exhibit 40, which is the attachment to the complaint.
24   A. Yes.
25   Q. Okay. And is it your testimony that that

**12 (Pages 42 to 45)**

© Ace-Merit, LLC   (513) 241-3200
30 Garfield Place, Suite 620   Cincinnati, Ohio 45202

434

| ACCOUNT NUMBER | BALANCE AS OF 04/25/2005 | PAYMENT DUE DATE | MINIMUM PAYMENT | PAYMENT ENCLOSED |
|---|---|---|---|---|
|  | 9,953.18 | PAST DUE | 9,953.18 | $ |

Make Checks Payable To Unifund

# UNIFUND STATEMENT

CHRISTINA M GORAY

**REDACTED**

### MESSAGE FROM UNIFUND

YOUR ACCOUNT IS PAST DUE $9,953.18. THE PAST DUE AMOUNT IS INCLUDED IN THE MINIMUM PAYMENT. PLEASE REMIT IMMEDIATELY. IF YOU HAVE ALREADY SENT A PAYMENT FOR THE ABOVE AMOUNT, THANK YOU.

**TRANSACTIONS:**

| Date | Transaction | IR | Balance | Due | Payments | New Balance |
|---|---|---|---|---|---|---|
| 04/25/2005 | 's Account Was Issued Under The Name Of WAMU GW CLASSIC. | 0.2700 | 9,953.18 | 9,953.18 | 0 | 9,953.18 |

PROMPT CREDITING OF PAYMENTS. TO RECEIVE CREDIT FOR PAYMENTS AS OF THE DATE OF RECEIPT, WE MUST RECEIVE YOUR CHECK OR MONEY ORDER AT:

UNIFUND
10625 TECHWOODS CIRCLE
CINCINNATI, OH 45242

PAYMENTS RECEIVED AT THE ABOVE ADDRESS IN THE MANNER SPECIFIED AFTER THAT TIME WILL BE CREDITED TO YOUR ACCOUNT AS OF OUR NEXT BUSINESS DAY. THE CREDITING TO YOUR ACCOUNT OF PAYMENTS RECEIVED AT ANY LOCATION OTHER THAN THE ABOVE ADDRESS MAY BE DELAYED UP TO 5 DAYS OF RECEIPT.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR. FEDERAL LAW REQUIRES US TO INFORM YOU THAT THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Unifund Statement

**EXHIBIT 1**